James E. FITZGERALD ex rel. Lorenzo MICELI, Petitioner, Appellant,

v.

H. R. LANDON, District Director, United States Immigration and Naturalization Service, Respondent, Appellee.

No. 5163.

United States Court of Appeals
First Circuit.

Dec. 17, 1956.

James E. Fitzgerald, Boston, Mass., for appellant.

George H. Lewald, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., and Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The present appeal is from an order of the district court dismissing a petition for a writ of habeas corpus in a deportation case. It may be wondered how appellant could have expected the district court to rule other than it did on the very meager record in this case.

In the petition filed by appellant on behalf of the alien Lorenzo Miceli it was alleged that Miceli was being unlawfully, restrained of his liberty by the defendant as District Director of the Immigration and Naturalization Service, pursuant to an illegal warrant of deportation; that such warrant was founded on § 241 (a) (4) of the Immigration and Nationality Act, 66 Stat. 204, 8 U.S.C.A. § 1251(a) (4), providing that an alien shall, upon order of the Attorney General, be deported who "at any time after entry is convicted of two crimes involving moral turpitude, *not arising out of a single scheme of criminal misconduct,*

regardless of whether confined therefor and *regardless of whether the convictions were in a single trial*" [italics added]; that on November 2, 1953, the Chief of Police of Pittsfield, Massachusetts, filed in the District Court of Central Berkshire two complaints against Miceli; that the first of these complaints charged that Miceli on October 23, 1953, "did commit an indecent assault and batter[y] on Carol Litano, a child under the age of fourteen"; that the second of these complaints charged that Miceli on October 23, 1953 [and] "during the three months next before the making of this complaint was a lewd, wanton and lascivious person in speech or behavior"; that Miceli was tried before the District Court of Central Berkshire in a single trial on these two charges; that he was convicted of both offenses, on the first of which he was sentenced to two and one-half years and on the second of which he was sentenced to six months, to be served concurrently at the House of Correction; that the Special Inquiry Officer unfairly and arbitrarily refused to apply the law "that the foregoing crimes arose out of a single scheme of criminal misconduct"; that this arbitrary and unfair decision was made although evidence had been accepted in the form of two sworn statements, one by the trial judge and the other by the Chief of Police "both of whom agreed that the acts arose out of a single scheme of criminal misconduct."

In response to a show-cause order, respondent filed his return, setting forth that Miceli was in his custody "by virtue of a valid Warrant of Deportation issued April 6, 1956"; admitting that Miceli had been convicted of the two offenses as alleged in the petition, but asserting that the Special Inquiry Officer found that Miceli "had been convicted of two crimes not constituting a single scheme of criminal misconduct on evidence presented to him;" and denying that the Special Inquiry Officer had acted arbitrarily or unfairly. Further, the return asserted "that the decision of the Special Inquiry Officer was based on reasonable, substantial, and probative evidence"; that on October 25, 1955, the Special Inquiry Officer ordered Miceli to be deported from the United States on the charge contained in the Warrant of Arrest; that on appeal to the Board of Immigration Appeals that Board, after hearing, dismissed the appeal from the decision; that all the administrative proceedings were conducted in conformity with the provisions of the Act, as construed by the Supreme Court in Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757, 99 L. Ed. 1107.

It nowhere appears that petitioner sought, and was denied, an opportunity to present evidence to the court below. The transcript of the administrative proceedings had not been appended as an exhibit to the return, nor did petitioner offer in evidence a certified copy thereof. Therefore the district court did not have before it the record of the administrative proceedings, including a transcript of the evidence presented to the Special Inquiry Officer, on the basis of which Miceli was ordered to be deported on the charge contained in the Warrant of Arrest. All the district court had before it was the petition for the writ, and respondent's return to the order to show cause.

The district court's order, now on appeal, after reciting that the case had come on "for hearing upon return of summons to show cause on petition of the relator for writ of habeas corpus, and after argument by the plaintiff," ordered that the petition be dismissed and the writ denied.

When the Congress provided for the deportation of aliens who at any time after entry had been convicted of two crimes involving moral turpitude "not arising out of a single scheme of criminal misconduct," the Congress evidently had in mind that a criminal, while engaged in a single criminal enterprise, might be guilty of two or more distinct offenses. See Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L. Ed. 1057; Gavieres v. United States, 1911, 220 U.S. 338, 31 S.Ct. 421, 55 L. Ed. 489; see, generally, Ekberg **v.**

United States, 1 Cir., 1948, 167 F.2d 380, 384 et seq. Thus one engaged in a single scheme of robbing a bank may be guilty of the offense of robbery, and also of the offense of inflicting a criminal battery upon a bank official. Though he might be convicted of both of these offenses, it was not the intention of Congress that he should be deported on this ground alone.

The two crimes of which Miceli was convicted in the District Court for Central Berkshire are separate and distinct offenses, and though they were joined together in a single trial it is certainly not necessarily true that they must have arisen "out of a single scheme of criminal misconduct" within the meaning of § 241(a) (4).

The second of these offenses is described in Mass.G.L.(Ter.Ed.1932) c. 272, § 53, St.1943, c. 377, as follows:

"Stubborn children, runaways, common drunkards, common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by imprisonment at the state farm, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

The offenses set forth in this section have long been obnoxious to the law of Massachusetts. See the earlier history contained in Commonwealth v. Diamond, 1924, 248 Mass. 511, 143 N.E. 503. The offense of being a lewd, wanton or lascivious person in speech or behavior "consists in being a person of the character and behavior described", as explained in Commonwealth v. Parker, 1862, 4 Allen 313, 314, 86 Mass. 313. Or, as the court said in Commonwealth v. O'Brien, 1901, 179 Mass. 533, 534, 61 N.E. 213, 214, the Act "punishes being a certain kind of person, not doing a certain overt act".

On the other hand, the crime of indecent assault and battery on a child under the age of fourteen was made a separate offense in 1953 and is now provided for in Mass.G.L.(Ter.Ed.1932) c. 265, § 13B, St.1953, c. 299.

We have found no case in Massachusetts in which a conviction of the offense of being a lewd, wanton and lascivious person was sustained solely upon evidence of a single act of indecent assault which would also be an offense under chapter 265, § 13B. What our decision would be, on the issue of deportability in such a situation, it is not necessary now to decide. In Commonwealth v. O'Brien, supra, conviction of being a lewd, wanton and lascivious person solely on evidence relating to the conduct of the defendant on a single occasion was upset by the Supreme Judicial Court. The court said, 179 Mass. at page 534, 61 N.E. at page 214:

"When, then, as in this case, the proof is confined to conduct on a single occasion, it does not sustain the complaint unless the conduct fairly warrants an inference that the defendant is a person of the kind described. * * * And it follows that as the conduct proved is not the offense but only a ground of inference, everything that bears upon the inference to be drawn from it should be admitted. *If we assume without deciding* that the defendant's being in the room and doing whatever he may have done, unexplained, was some evidence against him, the inference that those facts were indicative of character might be affected very much by finding out how he happened to get there. * * * We are of opinion that the corroborative evidence offered by the defendant should have been admitted." [Italics added.]

And as stated in Commonwealth v. Parker, supra, the offense of being a lewd,

wanton and lascivious person, "if it may consist in a single act or speech, may also consist in a series of acts or speeches, or of misconduct in this way continued through a considerable period of time." 4 Allen at page 314, 86 Mass. at page 314. Thus, in Commonwealth v. McNamee, 1873, 112 Mass. 285, a conviction of being "a common drunkard" was sustained upon evidence showing that "the defendant was drunk on from five to seven different occasions on as many different days".

We have no reason to assume, therefore, that Miceli was convicted of being a lewd, wanton and lascivious person solely on the basis of the one act of indecent assault charged against him in the first complaint. The evidence on the basis of which he was convicted of that offense in the District Court of Central Berkshire is not before us. For all that we may know, the conviction of that offense might have been based upon evidence of repeated acts of lewd speech or behavior fully warranting the inference that the defendant possessed the depraved character described.

It is true that it was alleged in the petition herein, and not denied in the return, that at the administrative hearing before the Special Inquiry Officer there were introduced in evidence letters from the state trial judge and the Chief of Police "both of whom agreed that the acts arose out of a single scheme of criminal misconduct." That amounts to no more than an expression of opinion by the two state officials as to the meaning of a provision in a federal statute. The facts upon which that opinion of law is ventured are not set forth. Such expression of legal opinion is not binding on the federal authorities. For all we know, the state judge and the Chief of Police might have thought that, if Miceli was guilty of repeated acts of indecent assault against young girls, in which he employed the same technique and pattern of conduct, the several separate offenses would arise "out of a single scheme of criminal misconduct" within the meaning of § 241(a) (4). This of course would not be so.

As we have stated above, the return by respondent avers that the decision of the Special Inquiry Officer "was based on reasonable, substantial, and probative evidence." That evidence, the substance of which we do not know, might well have been adequate to sustain the finding that the two offenses of which Miceli was convicted did not arise "out of a single scheme of criminal misconduct". The situation would seem to call for the application of 28 U.S.C. § 2248: "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

A judgment will be entered affirming the order of the District Court.