Cesar Nicolau PACHECO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 76–1203.

United States Court of Appeals,
First Circuit.

Nov. 15, 1976.

Thomas R. Barbieri, Lawrence, Mass., for petitioner.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D.C., with whom Philip Wilens, Chief, Government Regulations and Labor Section, Crim. Div., and James P. Morris, Atty., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before COFFIN, Chief Judge, CLARK,* Associate Justice, U.S. Supreme Court (Ret.), and McENTEE, Circuit Judge.

COFFIN, Chief Judge.

Petitioner seeks review of an order of the Board of Immigration Appeals dismissing his appeal from the deportation order of an Immigration Judge. Petitioner in a single state trial had been convicted under two separate indictments of breaking and entering in the nighttime with intent to commit larceny. One indictment charged an August 4, 1974 entry into a restaurant; the second charged an August 6, 1974 entry

* Sitting by designation.

into a church. Because of these two convictions for crimes of moral turpitude, the Immigration and Naturalization Service sought petitioner's deportation under 8 U.S.C. § 1251(a)(4).[1]

Petitioner asserts that both break-ins—and two additional ones on August 6—were the result of a prolonged period of drunkenness spanning both dates; that the shortness of the time period, the fact that his companions in all the enterprises were the same, the homogeneity of the technique (opening an unlocked door), and the continuity of his drunkenness render this a "single scheme" under the statute or at least demonstrate, on this record, that there was no substantial evidence to support a finding of a single scheme and that the prosecution failed to sustain its burden of proof.

Petitioner is 26 years of age, and a citizen of Portugal. His parents and all siblings live in this country except a married sister who lives in Portugal. Apart from the escapades in issue here, for which he served five months in prison, his criminal record is barren. The Immigration Judge, acknowledging that the "result is drastic", nevertheless felt compelled to order deportation.

We are aware of the canon which requires doubts in the construction of a statute to be resolved in favor of the alien. *Barber v. Gonzales,* 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009 (1954); *Fong Haw Tan v. Phelan,* 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed.

433 (1948). We are also mindful that the words "single scheme" contain less precision than meets the eye.[2] A scheme could be as ambitious and enduring as those of Ponzi or Insull. The legislative history, while atmospheric, sheds no light on § 1251(a)(4); all we can say is that it was part of the Immigration and Nationality Act of 1952, which was looked on generally as more restrictive than prior legislation.[3] *See Costello v. Immigration and Naturalization Service,* 311 F.2d 343, 348 (2d Cir. 1962), *rev'd on other grounds,* 376 U.S. 120, 84 S.Ct. 580, 11 L.Ed.2d 559 (1964).

It comes as no surprise to learn that the courts have run with this ball in various directions. Ours was the first to speak in *Fitzgerald ex rel. Miceli v. Landon,* 238 F.2d 864 (1st Cir. 1956). An alien had been convicted in a single trial of indecent assault on a child and of being, for some time prior to the assault, "a lewd, wanton and lascivious person". We observed:

"When the Congress provided for the deportation of aliens who at any time after entry had been convicted of two crimes involving moral turpitude 'not arising out of a single scheme of criminal misconduct,' the Congress evidently had in mind that a criminal, while engaged in a single criminal enterprise, might be guilty of two or more distinct offenses. . . . Thus one engaged in a single scheme of robbing a bank may be guilty of the offense of robbery, and also of the

---

1. Section 1251(a)(4) [Section 241(a)(4) of the Immigration and Nationality Act] provides in part:

    "(a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

    (4) . . . at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial."

2. Webster's Dictionary gives us little help. A scheme is "a plan or program of something to be done: a planned undertaking". Subsets of the concept range from "a crafty or unethical project", a "visionary project", and "a combination of elements . . . that are connected, adjusted, and integrated by design", to "a planned and often mildly mischievous diver-

sion", as a lark or escapade. Webster's Third New International Dictionary (1966). While petitioner's spree fits most closely the last definition this would not seem to be what Congress had in mind.

3. The section itself replaced a gentler one under which the alien, to be deported, must have been "sentenced more than once to [a term of one year or more]". Section 19(a) of the Immigration Act of 1917, 39 Stat. 874, 889. In debate preceding the overriding of the President's veto, Senator McCarran, one of the bill's sponsors, referred to "those provisions of the bill which are designed to strengthen the exclusion and deportation procedures so that we can prevent the entry and cause the deportation of subversives, criminals and undesirables." 98 Cong.Rec. 8254. *See also* 98 Cong.Rec. 5090.

offense of inflicting a criminal battery upon a bank official. Though he might be convicted of both of these offenses, it was not the intention of Congress that he should be deported on this ground alone." 238 F.2d at 865–66.

We rejected the opinion of a state trial judge and the Chief of Police that the acts arose out of a single scheme, saying, "For all we know, the state judge and the Chief of Police might have thought that, if Miceli was guilty of repeated acts of indecent assault against young girls, in which he employed the same technique and pattern of conduct, the several separate offenses would arise 'out of a single scheme of criminal misconduct' . . .. This of course would not be so." *Id.* at 867.

Subsequent cases have obviously not deemed *Miceli* controlling. It is small wonder that the courts have been tempted to soften the harshness of the requirement by treating "single scheme" as an elastic concept. In the process "justice" was often done, although attempts to articulate on all-purpose definition were less successful. In the early case of *Jeronimo v. Murff,* 157 F.Supp. 808 (S.D.N.Y.1957), petitioner was charged with larceny, bribery, and conspiracy to defraud a municipality by making false claims for labor and materials. Substantive counts alleged the making of such claims over four time periods within a span of two years. Decision was helped by the fact that the indictment itself alleged that all acts were part of a common scheme. The court, however, did not rest on this point. While acknowledging that several crimes committed "at or about one time as the result of the same criminal impulse or on one occasion in the course of the same transaction or episode" would be probative of a single scheme, 157 F.Supp. at 815, it set forth other factors which could also be probative: "initial formulation of the same subsisting fundamental object and purpose . . . utilization of precisely the same methods and procedures . . . continuously interacting relationship and activities of the same persons . . . [and] victimizing of the same person." *Id.* This formulation would not help petitioner, but would

insulate an organized group which planned and executed a series of robberies of the branches of a large bank.

A second case, lacking a blanketing "common scheme" indictment but presenting a sympathetic case, was *Zito v. Moutal,* 174 F.Supp. 531 (N.D.Ill.1959). In that case the government sought to deport an alien of 36 years' residence for having pleaded guilty 16 years earlier to two counts of removing and concealing two lots of alcohol with intent to defraud the United States of taxes, one such concealment taking place on or about September 9, 1940, the other on September 18, 1940. The court held the violations to be but a single scheme. Whether the court would have taken the same view toward one who had sold and distributed heroin periodically during a year or so may be doubted. A similar case is *Barrese v. Ryan,* 203 F.Supp. 880 (D.Conn.1962), where petitioner was prosecuted for carrying on the business of selling liquor in his restaurant without having paid a $25 federal occupational tax for two successive years. The violations, while technically crimes of moral turpitude, may well have been deemed not to justify deportation. But it becomes difficult to call two failures to pay such a tax a single scheme and not apply the same approach to a major underworld figure who was convicted of wilful income tax evasion in successive years. *Costello v. Immigration and Naturalization Service, supra,* 311 F.2d at 343. *See also Chanan Din Khan v. Barber,* 253 F.2d 547 (9th Cir.), *cert. denied,* 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364 (1958).

From consecutive tax violations it is a small step to more robust crimes. An early case is *Wood v. Hoy,* 266 F.2d 825 (9th Cir. 1959), where four armed men robbed a liquor store and, three days later, a drive-in theater. The key figure was an ex-convict; petitioner was only twenty years old at the time. The court observed that the crimes were both robbery of the first degree, that they were committed within three days of each other by the same four persons, and particularly that the crimes had been planned several weeks in advance. It held

that the Special Inquiry Officer had paid no attention to the requirement that the crimes be proven not to have arisen from a single scheme and remanded for further findings. A similar case arose in the third circuit, *Sawkow v. Immigration and Naturalization Service,* 314 F.2d 34 (3d Cir. 1963). There, auto thefts had been committed on two successive days. The court held these to be a single scheme, observing that the thefts, so far as the record disclosed, might have taken place "within a few minutes of each other". *Id.* at 38.

Finally, *Nason v. Immigration and Naturalization Service,* 394 F.2d 223 (2d Cir.), *cert. denied,* 393 U.S. 830, 89 S.Ct. 98, 21 L.Ed.2d 101 (1968), was a much clearer case in terms of the lapse of time between crimes. Petitioner had engaged in two periods of mail fraud activity, separated by an interval of nine months. The court, while accepting the view that a single scheme "is not so narrow as a single criminal act or transaction", held that petitioner's "nebulous intention to repeat his crime with the same or other victims some day in the indefinite future" was not a concrete scheme in the sense of a "specific, more or less articulated and coherent plan or program of future action". *Id.* By implication, evidence that petitioner had planned to leave a nine month interval between his mail frauds might have supplied the missing ingredient.

Undoubtedly the stimulus for a broad interpretation of "single scheme" has been the institution of deportation proceedings against aliens whose crimes are at the lightest end of the "moral turpitude" spectrum. A combination of the breadth of that phrase and occasionally harsh enforcement decisions has forced the case law we have. The statute is desperately in need of a more tailored approach by the Congress. In the meantime, however, we must find our own way. We are reluctant to adopt a definition of "single scheme" that depends on a multitude of factors, for the result is bound to be selective law enforcement and disparities in judicial treatment. This is particularly so to the extent that the subjective factor of forethought is critical. We would also deem it a paradox if the definition excluded this petitioner, whose crimes were committed during periods of intoxication, but saved from deportation one who coolly mapped out several robberies in advance.

We cannot overlook, in addition to the generally heightened severity of the Act, its abandonment of a requirement for more than one sentence. *See* note 3 *supra.* Before the 1952 Act, closely parallel crimes might have been tried together, resulting in only one sentence; and such a sentence would not have been a sufficient basis for deportation. The 1952 amendments, absent a single scheme, do not save a defendant in this situation from deportation. Nevertheless, we accept the conclusion that the intent of Congress in 1952 was to give "a one-time alien offender . . . a second chance before he could be deported." *Nason, supra,* 394 F.2d at 227.

To us this suggests that a scheme, to be a "single scheme", must take place at one time; there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise and reflect on what he has done. The government wishes us to adopt the formulation of a "single transaction". We think that to equate "single scheme" with "act" or "transaction" may give insufficient scope to the statutory phrase, particularly if these words are narrowly construed. As other courts have noted, the Congress could have chosen more precise words. And, while "transaction" might cover the generality of cases, such as a bank robbery which encompasses an assault on bank employees, we can conceive of more than one separate criminal transaction occurring within a short time period and emanating from the same enterprise. For example, a bank robbery might involve not only an expectable assault against bank employees but also other crimes which could occur in the course of escape—theft of a car, assault on a pursuer, reckless driving, and the like. Such, we think, might well be deemed part of a single scheme, even though they might also be called separate transactions.

In *Fitzgerald, supra,* we used the word "enterprise". While this may be too broad, it is nearer the mark than the narrowest reading of "transaction". Our present thinking is that both the purpose of the statute and the use of the adjective "single" point to a temporally integrated episode of continuous activity. When the immediate activity has ended, even though a "scheme" calls for future activity a participant has his second chance to make a decision. He need not further pursue a multistage scheme. In this case, the two crimes were separated in time by a two-day interval. Petitioner testified at his hearing that he was drunk on the occasion of the first break-in, that he was drinking on the next day, and that he remembered getting drunk again on the third day, when the second break-in took place. The conclusion of the Immigration Judge that the crimes did not involve a single scheme of criminal misconduct is supported by the evidence. Indeed, if this sequence of events were to qualify as a single scheme, the concept would be so open-ended as to embrace any series of crimes so long as each was associated with a drinking bout.

Deportation is, as the Immigration Judge acknowledged, a drastic sanction. Petitioner is relatively young and his prior record was good. But the elasticity of the "single scheme" statute is limited. We note also that Congress has provided in 8 U.S.C. § 1251(b) that a judge at the time of sentencing, or within thirty days thereafter, may make a binding recommendation against deportation. *Velez-Lozano v. Immigration and Naturalization Service,* 150 U.S.App.D.C. 214, 463 F.2d 1305 (1972). Such a recommendation was apparently not made in this case. At this juncture we see no proper basis for setting aside the Board's order.

*Affirmed.*