**UNITED STATES of America, Plaintiff,**

v.

**Timoteo SANCHEZ–GUZMAN, Defendant.**

**No. CR–90–89–RJM.**

United States District Court, E.D. Washington.

July 18, 1990.

John E. Lamp, U.S. Atty., James B. Crum, Asst. U.S. Atty., Spokane, Wash., for plaintiff.

Lonnie F. Sparks, Spokane, Wash., for defendant.

## ORDER

ROBERT J. McNICHOLS, District Judge.

Mr. Sanchez was charged in a single-count indictment with using a counterfeit alien registration card in violation of 18 U.S.C. § 1546(a). He pled guilty and was sentenced on May 29, 1990. Judgment was entered on June 18, 1990. On June 7, 1990, after sentencing but prior to entry of judgment, defendant filed a motion for a judicial recommendation against deportation [JRAD] pursuant to 8 U.S.C. § 1251(b)(2).[1] Service of the motion and supporting papers was made on the Immigration & Natu-

ralization Service [INS] field office at Spokane, Washington that same date. The motion was noted to be heard fifteen days later on June 22, 1990. Although oral argument was not contemplated, defense counsel appeared at the appointed time and the matter was taken under advisement.[2]

In reviewing the file, the Court noted that service had apparently not been made on the INS District Director at Seattle as required by 8 C.F.R. § 241.1(a). See Appendix. This feature seemed confirmed by the fact that the District Director had not responded to the motion as provided by 8 C.F.R. § 241.1(c). The mode of service raised some concern because of commentary accompanying the most recent revisions to 8 C.F.R. § 241.1:

> Another commenter questioned or criticized why INS did not authorize service upon a sub-office as opposed to the district office. It is the responsibility of the district director to decide the representation made to the court. The district director has the right to see the motion and communicate his/her wishes to the sub-office. Also, it would be the normal practice for a district director to consult legal counsel on such matters. However, every district has a district counsel who is responsible for the conduct of legal affairs in that district. Therefore, service will be on the district director.

55 FR 11150–01, Supplementary Information (March 27, 1990).

It would thus appear that INS has adopted a deliberative position that service on a field sub-office is not service upon the District Director and thus not service upon the INS as required by 8 U.S.C.

---

1. Which provides:

The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply ... if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter. The

provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a)(11) of this section.

2. It was fortuitous that counsel appeared. For reasons unknown, the motion did not find its way on to the Court's calendar. But for counsel's appearance, the matter would have fallen through the cracks and yet another alien would have been deprived through clerical error of the judicial process to which Congress has entitled him.

§ 1251(b)(2). If so, the subject motion would have a problem for lack of timely compliance with the notice provisions.

It is almost universally held that the requirements of § 1251(b)(2) are jurisdictional. For example, a failure to obtain a formal order granting relief within the statutory time frame of thirty days renders any ensuing JRAD void. *Pacheco v. I.N.S.*, 546 F.2d 448, 452 (1st Cir.1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977); *Velez–Lozano v. I.N.S.*, 463 F.2d 1305, 1307–08 (D.C.Cir. 1972); *Marin v. I.N.S.*, 438 F.2d 932, 933 (9th Cir.), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2238, 29 L.Ed.2d 702 (1971); *Bruno v. United States*, 336 F.Supp. 204, 205–06 (W.D.Mo.1971). Less settled is the effect of a deficient notice, although implicit in the mainstream of pertinent decisions is the caution that this too will ordinarily be jurisdictional in nature. *See, e.g., Haller v. Esperdy*, 397 F.2d 211, 214 (2nd Cir.1968). *But see, Cerujo v. I.N.S.*, 570 F.2d 1323 (7th Cir.1978) (untimely notice not fatal so long as INS ultimately has opportunity to be heard and is not otherwise prejudiced); *see also*, note 3, *infra*. Pre-existing case law aside, the present version of the subject regulation now provides unambiguously that:

> [f]ailure to furnish due notice for any reason shall constitute a waiver by the alien of the introduction of a judicial recommendation against deportation into evidence, and of any reference to such judicial recommendation before a special inquiry officer.

8 C.F.R. § 241.1(a).

Assuming, arguendo, that compliance with the regulation is jurisdictional,[3] the net result is that if service were deemed insufficient, then any order the Court might enter would be without efficacy, at least insofar as the special inquiry officer is concerned. Moreover, if a JRAD must be entered within thirty days of sentencing (§ 1251(b)(2)), and if the INS is entitled to fifteen days notice prior to entry of such an order (8 C.F.R. § 241.1(a)), then these proceedings would be fatally flawed, and not amenable to nunc pro tunc correction. *Velez–Lozano, supra*, 463 F.2d at 1307–08.

Based on these concerns, the staff was directed to contact both defense counsel and the AUSA assigned to the case. Defense counsel confirmed that he had served only the Spokane field office. Government counsel has been unsuccessful in having his phone calls to the Seattle INS office returned and thus has nothing to report. In light of the agency's nonparticipation in these proceedings, however, it must be assumed that the District Director does not consider service on the local office to be service upon him. Accordingly, an order was entered on June 26, 1990 granting the motion as a protective maneuver, and, without disturbing the efficacy of the relief just granted, set the matter for rehearing on July 17, 1990. The Clerk was directed to forward to the District Director all of defendant's moving papers, the content of which is in good substantive order. The Court indicated at the time that it would research the notice issue, and that a further memorandum would issue.

Requests for a JRAD were virtually unheard of in this district until recently. Within the past several months, however, the bar's awareness of this generous avenue of relief has been awakened,[4] and it has suddenly become virtually a fad in every case involving an alien defendant to seek such relief whether or not it would be helpful to the client as a practical matter.[5]

---

3. A proposition not free of doubt, but one which Mr. Sanchez should not have to chance. See *Matter of Ligidakis*, Interim Decision 3120 (BIA July 25, 1989) (actual notice of pendency of motion and opportunity to be heard, regardless of compliance with regulation, is sufficient). *Ligidakis*, of course, was construing the pre-1990 version of 8 C.F.R. § 241.1.

4. While styled as a "recommendation," it is not. Such an order is binding on the INS. *Velez–Lo-*

*zano, supra*, 463 F.2d at 1308. The government remains free to seek deportation on one or more alternative grounds other than 8 U.S.C. § 1251(a)(4). *United States v. George*, 534 F.Supp. 570, 571 (S.D.N.Y.1982).

5. Since some might accuse this memorandum of engaging in an empty exercise, it should be noted that this is a case where the practical effect of a recommendation is uncertain. Contrary to popular belief, the relief afforded under

Low and behold, the defense bar no sooner discovered the JRAD process and the ground rules changed. Effective April 26, 1990 the regulation was radically altered both substantively and procedurally.[6] 51 FR 11150–01. In terms of substance, the movant must now provide INS with a comprehensive biographical sketch. 8 C.F.R. § 241.1(a).[7] More critical yet is the procedural modification. Instead of the five-day notice of hearing previously required, INS is now entitled to fifteen days. *Id.* As mentioned *supra,* however, the thirty-day limitations period of § 1251(b)(2) remains in effect. The net result is that a movant now has but fifteen days after disposition of his case in which to file a motion in good form, and to perfect service. Whether that was accomplished in this case provides the grist for what follows.

The language "disposition of the case" was used advisedly, because the Court is aware of no definitive decisional guidance on the question of when the case is sufficiently disposed of to trigger the thirty-day limitations period.[8] With that, we turn to the statute which provides that relief will be appropriate only "if the court sentencing such alien for such crime shall make, at the time of first imposing judgment *or* passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported...." 8 U.S.C. § 1251(b)(2) [emphasis added].

To anyone in Mr. Sanchez's position, an ambiguity should immediately leap out. In fixing both the time of passing sentence and the time of imposing judgment as commencement points for calculating the thirty days, the obvious inquiry is whether that language should be read as incorporating the modifying terms "whichever is earlier," or "whichever is later." One reading or the other must necessarily flow, because if both of these disjunctive occurrences are equally valid to serve as trigger points, the potential for arbitrariness and uncertainty is apparent.

In any number of state courts, that is a *distinction without a difference,* because trial courts in many jurisdictions routinely sign a minute entry of judgment during the course of a sentencing hearing. Thus, the time of sentencing and the time of judgment are one and the same. In the federal system, at least as it operates in this district, these events are rarely contemporane-

§ 1251(b)(2) is quite narrow and precludes only a deportation grounded on § 1251(a)(4). Note 4, *supra; see also, Oviawe v. I.N.S.,* 853 F.2d 1428, 1431–34 (7th Cir.1988) and authorities cited therein. That subsection allows deportation when the alien has been convicted of a single crime of moral turpitude which results in a sentence exceeding one year; or where two unrelated crimes of moral turpitude have been committed regardless of the sentence imposed. *Jew Ten v. I.N.S.,* 307 F.2d 832, 833–34 (9th Cir.1962), *cert. denied,* 371 U.S. 968, 83 S.Ct. 551, 9 L.Ed.2d 538 (1963). Mr. Sanchez could not now be deported under subsection (a)(4) as he was sentenced to less than one year for the subject offense and has no prior record. He could, of course, be deported (if he has not already been) under § 1251(a)(2) as an unlawful entrant and a JRAD would be of no utility vis a vis those grounds.

However, neither the defense nor the Court is blessed with the ability to see around all of the corners. If Mr. Sanchez wishes this relief, and if it seems warranted by the facts, there is no bar to considering it notwithstanding that its practical effect is inchoate at best. Defense counsel all too often tend to view collateral consequences as an afterthought. If Mr. Sanchez's attorney wants to protect his client against what the law might be five years from now, or against the possibility of further entanglement with the criminal process, he is to be commended for that approach. It should be borne in mind, in this regard, that a JRAD applies equally to both deportation and exclusion proceedings.

6. Since the bench and bar generally must rely on the official compilation of the Code of Federal Regulations as resource material, and since the current edition of Title 8 was distributed only several months ago (after the subject regulation became effective, it might be added), and since the next edition will probably not be published for another ten months or so, the present text of the regulation is set out as an Appendix.

7. That was accomplished in this case. Counsel was apparently aware of the recent substantive modifications.

8. Some decisions have assumed, without deciding and without analysis, that the trigger date is the time of sentencing. *Pacheco, supra,* 546 F.2d at 452; *Velez–Lozano, supra,* 463 F.2d at 1308. For reasons to follow, the Court must decline to blindly embrace such dicta.

ous. After a sentencing hearing, the United States Attorney prepares a form of judgment in accord with the Court's oral ruling. The Probation Department reviews it. The Clerk processes it. The form eventually meanders down to chambers where the Court reviews it, and if in conformity with the oral disposition, signs it. The Clerk then dockets it of record. The process will routinely take anywhere from two to three weeks. There is nothing extraordinary about the fact that judgment was entered herein twenty days subsequent to the sentencing hearing.

That states the problem, but not the solution. As an initial proposition, there would have been no reason for Congress to have included two alternative trigger dates unless it intended one to control over the other. But which one?

When in doubt, it never hurts to apply the interpretive rule of common sense. Suppose that implicit in the statute is the proviso, "whichever is earlier." Since in

the normal course a judgment will not precede a sentencing, and thus could not occur earlier in time, such a reading would render the reference to judgment altogether superfluous. An elemental rule of construction is that a statute will be read in harmony, giving effect to all of its terms and rendering none extraneous or meaningless. *See, e.g., Beisler v. C.I.R.*, 814 F.2d 1304, 1307 (9th Cir.1987).

It could be argued that situations will occasionally arise where, because of an illegal sentence or some error cognizable under FRCrP 36, a judgment will in fact be entered prior to a superseding sentence. Note, however, that the statute expressly refers to the time of *"first* imposing judgment or passing sentence." It would thus appear that Congress has taken into account the unique scenario in which judgment precedes the ultimate sentence.[9] This is turn lends impetus to the conclusion that to the extent any modifying language

**9.** *But see, Bruno, supra,* 336 F.Supp. at 206 (invalid sentence restarts 30–day period). Some courts, upset with the unsettling prospect of seeing an otherwise deserving alien deprived of an opportunity to seek a JRAD through the bumbling of counsel, have adopted an equally unsettling curative approach. A motion for a recommendation is part and parcel of the sentencing process. *Janvier v. United States,* 793 F.2d 449, 453 *et seq.* (2nd Cir.1986), *on remand,* 659 F.Supp. 827 (N.D.N.Y.1987). As such, it is a critical stage within the meaning of the Sixth Amendment. *Id.* at 455. A lawyer who fails to bring such a motion, or who brings one and then bolixes it up, has provided ineffective assistance within the meaning of the Sixth Amendment. *Id.* Ineffective assistance means that the accused has received a constitutionally deficient sentence. *Id.* Ergo, the judgment may be vacated, the sentence set aside, and a new sentence imposed thereby restarting the thirty days set forth in § 1251(b)(2). *Id.* at 455–56.

A number of States, historically ahead of the federal judiciary in looking to collateral consequences, have been quick to adopt this approach as their own. *See, e.g., People v. Barocio,* 216 Cal.App.3d 99, 264 Cal.Rptr. 573, 578–81, *rev. denied* (1990); *People v. Pozo,* 746 P.2d 523, 527–29 (Colo.1987) and authorities cited therein; *People v. Hyun Chul Nho,* 137 Misc.2d 978, 979, 523 N.Y.S.2d 368, 369 (1987); *Lyons v. Pearce,* 298 Or. 554, 694 P.2d 969, 976–78 (1985) (failure to move for JRAD *per se* inadequate assistance); *see also, People v. Huante,* 194 Ill.App.3d 159, 141 Ill.Dec. 109, 111–14, 550 N.E.2d 1155, 1157–60, *appeal allowed,* 132 Ill.2d 550, 144 Ill.Dec.

262, 555 N.E.2d 381 (1990). There is less than unanimity on the subject. See *People v. Kadadu,* 169 Mich.App. 278, 425 N.W.2d 784, 785–87 (1988) (arraying split of authority). It is noteworthy, however, that some decisions which have refused to adopt this view have since been legislatively abrogated. *State v. Santos,* 136 Wis.2d 528, 401 N.W.2d 856, 858 n. 3, *rev. denied,* 137 Wis.2d 652, 411 N.W.2d 140 (1987). *Cf., In re Peters,* 50 Wash.App. 702, 704 *et seq.,* 750 P.2d 643 (1988) (declined to apply statute retroactively). With Wisconsin having joined the list, at least seven states have now enacted statutes geared to assure that an alien is apprised of his peril at the time of entering a plea. *Pozo, supra,* 746 P.2d at 526 n. 4.

While that is certainly a slick way to relieve an alien of the statutory prescription that the time begins to run upon judgment "first" being imposed or "first" undergoing sentence, this tact need not be adopted in order to resolve Mr. Sanchez's problem. First, there is room for debate whether a JRAD request is truly inextricably part of the sentencing process under federal law. *Santos v. Kolb,* 880 F.2d 941, 944 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). Second, even assuming arguendo that it falls below the standard of care in a constitutional sense for an attorney to fail to bring such a motion or to do so properly, this case carries the overlay of the new procedural requirements of 8 C.F.R. § 241.1. For reasons to be addressed *infra,* the Court hesitates to condemn the average practitioner for failing to be conversant with the terms thereof.

must be implied at all, it is the term "whichever is later." So viewed, the trigger date in Mr. Sanchez's case is June 18, 1990.

Then too is the general rule of construction that when the legislature enacts an ameliorative rule designed to forestall harsh results, the rule will be interpreted and applied in an ameliorative fashion with the goal of promoting congressional intent. This is particularly so in the immigration context where doubts are to be resolved in favor of the alien. *See, e.g., Janvier, supra,* 793 F.2d at 455 and authorities cited therein. As the principle was restated in *Matter of Vizcaino,* Interim Decision #3061 (BIA April 15, 1988):

> Unlike the stepchild provision, section 101(b)(1)(D) of the Act, as amended, does carry specific qualifying language. Since Congress qualified the language, we must give some meaningful effect to it. As noted, Congress has provided no guidance as to the intended meaning of the phrase "bona fide parent-child relationship," and we shall not attempt a specific definition here. *We emphasize, however, that the expansion of section 101(b)(1)(D) to include the illegitimate children of their fathers clearly was intended as a generous provision, and it should therefore be generously interpreted.* [emphasis added]

Section 1251(b)(2) is precisely such a remedial statute, allowing as it does for an accused to be punished as the law provides and thereby discharge his debt to society, but to escape the brutal consequences of being forever foreclosed from gaining legal status. This approach as well counsels in favor of interpreting ambiguity in favor of the intended beneficiary.

Also persuasive by analogy is the language of FRAP 4(b):

> In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of (i) the judgment or order appealed from.... A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judg-

ment or order shall be treated as filed after such entry and on the day thereof.

It would thus appear that a sentence is in a sense interlocutory until such time as judgment is entered. True, a sentencing hearing is one of the most critical stages in a prosecution requiring the panoply of safeguards enumerated in FRCrP 32. True, a sentencing carries with it great solemnity, and disparities between the oral disposition and the subsequent judgment will be resolved in favor of the former. *United States v. Bergmann,* 836 F.2d 1220, 1221–22 (9th Cir.1988). These observations do not obviate the fact that nothing is final for judicial purposes until judgment is docketed of record. For judicial purposes, a sentencing hearing is merely a step, albeit a crucial one, on the road to final disposition. Had Congress intended a different result with respect to § 1251(b)(2), it would have said so.

The net result is that the Court concludes as follows:

(1) The thirty-day limitations period of § 1251(b)(2) was triggered upon entry of judgment on June 18, 1990.

(2) A hearing on defendant's motion for a recommendation against deportation held on July 17, 1990 would be timely.

(3) Service on the INS by July 2, 1990 would be timely.

(4) Service of defendant's moving papers upon the District Director as provided for in the Order entered June 26, 1990 presumptively affords INS the requisite notice.

That ends the inquiry, but more needs to be said in defense of defense counsel. The commentary to the present version of 8 C.F.R. § 241.1 treats the reader to the following analysis:

> One commenter stated that there are difficulties in scheduling hearings on the criminal court calendar and that there are tremendous time pressures on the criminal defense bar, especially Legal Aid attorneys and court appointed attorneys representing indigent clients. Another argument advanced is that the

criminal defense attorney would have to research an unfamiliar area of the law.

\* \* \* \* \* \*

The argument that the criminal defense lawyer is not familiar with the procedures to obtain a judicial recommendation against deportation and must contact or refer the alien to an immigration law specialist simply lacks merit. The procedures are not so complicated that a criminal defense lawyer cannot quickly absorb them or realize early on that the case necessitates association with an immigration law specialist.

55 FR 11150–01, Supplementary Information (March 27, 1990).

In the best of all worlds, every practicing attorney would be thoroughly familiar with the maze of regulations attendant to immigration law, taxation, public contracts, and environmental law. But that is not how the real world works. Each of these areas is a discrete school unto itself demanding a high degree of intensive study supported by years of hands-on experience. Those who practice in these fields generally do little else. It is startling to see how many attorneys in this district over the past several months, including some highly skilled and respected members of the defense bar, have managed to misread what INS characterizes as an uncomplicated scheme.[10]

Nor is it any answer to tell an attorney that the standard of care demands association with one skilled in immigration law. This is so for two reasons. First, there is no attorney in Spokane deserving of the title "immigration law specialist." Second, the Court is unable to recall a single prosecution involving an alien charged with a non-drug offense in which he or she appeared through retained counsel.[11] These defendants are invariably indigent, and counsel are *always* appointed under the Criminal Justice Act. 18 U.S.C. § 3006A. Thus, even assuming the availability of an immigration specialist, it is not clear who is supposed to pay for his or her services. *United States v. Nakamura,* 577 F.2d 485, 488–89 (9th Cir.1978) (no payment for attorney under CJA unless formally appointed); *United States v. Aadal,* 280 F.Supp. 866, 867–68 (S.D.N.Y.1967) (appointment of more than one counsel authorized under CJA only in most difficult case); *see also, United States v. Hinckley,* 721 F.Supp. 323, 325 n. 2 (D.D.C.1989); *see generally,* Administrative Office of the United States Courts, *Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases,* Vol. VII, Section A, Chap. 2 (conditions under which more than one attorney may be appointed at government expense).

All this is not to excuse the defense bar or to accuse the INS, but the speed which with this regulatory change came into effect is striking. Unmodified in substance since 1967, the present version of the regulation was adopted on March 27, 1990 and became effective on April 26, 1990. When an agency is going to promulgate rules arguably going to jurisdiction and thus not amenable to notions of equity, which are at

---

**10.** Which explains why a memorandum of this expanse would be entered in what is probably not a particularly critical case. See note 5, *supra.* What prompted counsel to believe that service on the local office would be sufficient is unknown, but the Court could hazard a guess. The regulation requires service on the "district director having administrative jurisdiction over the place in which the court imposing sentence is located." This is the Eastern District of Washington. The Spokane INS office services this district. The best of defense counsel, eminently skilled in criminal procedure, trial strategy, the rules of evidence and constitutional law, might well syllogistically reason that whatever office has jurisdiction over "the place in which the court imposing sentence is located" must be the district office and that the district director may be found therein. Anyone skilled in immi-

gration law, of course, would know that "district" and "district director" are terms of art and refer, respectively, to specific geographical service centers and to the chief administrative officer of each such location. 8 C.F.R. § 1.1(*o*) read together with 8 C.F.R. § 100.4(b). But there are no bells and whistles in 8 C.F.R. § 241.1 which would impart that notice. That may be what prompted INS to modify § 1.1 in 1988 by adding paragraph (*o*). 53 FR 30011–01.

**11.** The significance of the reference to "non-drug" offense is that a JRAD is not available for most drug-related crimes. 8 U.S.C. § 1251(b)(2); 8 C.F.R. § 241.2; *United States v. Gonzalez,* 582 F.2d 1162, 1165 (7th Cir.1978); *Antoine v. State,* 549 So.2d 802, 803 (Fla.1989).

striking odds with past practice, and which can impact the entire remaining lives of innumerable aliens and their innocent families who may have meritorious requests, basic fairness would suggest the need for a longer lead period in order to allow bench and bar a reasonable opportunity to become familiar with the new rules.

This is not to say that the defense bar should not be charged with knowledge of the availability of a JRAD. Of course it should. Such relief has been a mainstay in the criminal process for some seventy-five years. *Janvier, supra,* 793 F.2d at 453. Moreover, the imputation of such familiarity seems particularly appropriate in Washington given the observation that the State is among those which have legislatively mandated that an accused be apprised at the time of entering a plea of the potential deportation consequences. RCW § 10.40.200;[12] *see also,* note 9, *supra.* It is to say, however, that the bar has enough to do without keeping one eye glued on the Federal Register. Unless it was the intent of INS to sandbag alien defendants, there is no sound reason why the terms of 8 C.F.R. § 241.1 could not have been phased in over a time span designed to promote the interests of all concerned.

How other courts will handle this problem is unknown, but for whatever thought it might provoke, the undersigned intends to ask the Magistrate to enter an order at the time of arraigning an alien, or a suspected alien, calling counsel's attention to the pertinent statute and regulation, and directing that any motion for a recommendation be made at such time and in such a manner as to allow for hearing concurrently with the sentencing hearing. This will: (1) promote economy; (2) ensure counsel's awareness of the required procedure; (3) provide the Court with an opportunity to consider the accused's overall posture in relation to both sentencing and § 1251(b)(2) relief simultaneously; and (4) allow for a thirty-day grace period in which to cure any errors which might arise.

It is true that in the federal system, it is well settled that the risk of deportation is considered to be collateral to the sentencing process. *United States v. Montoya,* 891 F.2d 1273, 1292–93 (7th Cir.1989) and authorities cited therein. A court is thus under no obligation to independently apprise an alien of either his probable hazards or his certain jeopardy. *Id.; accord, Fruchtman v. Kenton,* 531 F.2d 946, 948–49 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976).[13] Wheth-

---

**12.** Which provides, in relevant part:

(1) The legislature finds and declares that in may [*sic*] instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea. It is further the intent of the legislature that at the time of the plea no defendant be required to disclose his or her legal status to the court.

(2) Prior to acceptance of a plea of guilty to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall determine that the defendant has been advised of the following potential consequences of conviction for a defendant who is not a citizen of the United States:

Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. A defendant signing a guilty plea statement containing the advisement required by this subsection shall be presumed to have received the required advisement. If, after September 1, 1983, the defendant has not been advised as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty and enter a plea of not guilty. Absent a written acknowledgement by the defendant of the advisement required by this subsection, the defendant shall be presumed not to have received the required advisement.

**13.** It is no doubt much too late in the game to rail against a rule so ancient and which finds so much unanimity among the circuits. It is interesting to note, however, the fundamental premise employed by the Ninth Circuit in *Fruchtman.*

er such advice need be provided by counsel is another question, and one which will require continued judicial debate to resolve. *Compare, Janvier, supra,* 793 F.2d at 452 *et seq. with United States v. Del Rosario,* 902 F.2d 55, 58–59 (D.C.Cir.1990); *see generally,* note 9, *supra,* and authorities cited therein. But just because a federal trial court has no affirmative duty to advise, it does not follow that there is a proscription against the practice:

> It is extremely troublesome that deportation has never been considered a direct consequence of guilty pleas of the sort that must be brought to the defendant's attention before his plea may be considered voluntary under Rule 11. Aliens form a discrete, easily recognizable class of defendants. They are deported by the same branch of government that brings criminal charges against them, and in many cases their deportation is a more direct and automatic consequence of conviction than any other sanction. District courts need to remember that although they are not required to explain the possibility of deportation to alien defendants before accepting a plea under Rule 11, nothing prohibits them from doing so. The distribution of justice to alien defendants can only be enhanced if the trial courts make sure such defendants know the pandects under which they plead.

*United States v. Russell,* 686 F.2d 35, 41–42 (D.C.Cir.1982); *see also, Del Rosario, supra,* 902 F.2d at 61 (Mikva, J., concurring).

▮ Moving on to the merits, Mr. Sanchez's story is a familiar one. He entered the United States on foot near Tijuana on March 22, 1990. He immediately secured a counterfeit registration card so he could find work. Work is what he did, and the record reflects that it is all he did. His parents and ten siblings (still in Mexico) were dependent on his earnings. While no PSI was generated, it appears undisputed that defendant has no prior criminal history either in Mexico or this country.

The Court does not minimize the seriousness of defendant's conduct, nor the dislocation created when aliens seek a better life without benefit of legal process. See *Gutierrez v. City of Wenatchee,* 662 F.Supp. 821, 822 (E.D.Wash.1987) and authorities cited therein. But the collateral consequence of being forever foreclosed from legal entry seems too high a penalty. *United States ex rel. Klonis v. Davis,* 13 F.2d 630 (2nd Cir.1926).

THEREFORE IT IS ORDERED that:

(1) The Order of June 26, 1990 granting defendant's motion for a judicial recommendation against deportation is CONFIRMED.

## APPENDIX

8 C.F.R. § 241.1—Notice; recommendation.

(a) For the purposes of clause 2 of section 241(b) of the Act, notice to the district director having administrative jurisdiction over the place in which the court imposing sentence is located shall be regarded as notice to the Service. The notice shall be transmitted to the district director by the defendant or by counsel for the defendant not less than 15 days prior to the date on which the court will hear the defense motion for a judicial recommendation against deportation. When less than 15 days notice is received, an objection shall be interposed to the recommendation against deportation on the ground that due notice was not received. If the notice is received after the running of the 30–day statutory period, it shall be regarded as an invalid notice. Failure to furnish due notice for any reason shall constitute a waiver by the alien of the introduction of a judicial recommendation against deportation into evidence, and of any reference to such judicial recommendation before a special inquiry

---

Deportation is collateral because it is a penalty imposed by "another agency over which the trial judge has no control and for which he has no responsibility." 531 F.2d at 949. In *Fruchtman,* that was true. The accused was deportable under § 1251(a)(11) which is expressly

carved out of the JRAD process. See note 11, *supra.* But can it be said that a trial court has no "control or responsibility" when the charge would result in deportation under § 1251(a)(4)? Quite obviously not. See note 4, *supra.*

officer. The notice to the district director shall include the following:

(1) The true and complete name of the defendant;

(2) The full name of the defendant as known to the court;

(3) The full name of the defendant as known to the Immigration and Naturalization Service;

(4) Any aliases by which he or she has been known or has himself or herself used:

(5) Date of birth;

(6) Place of birth including country;

(7) Country of citizenship;

(8) Alien registration number(s), if any;

(9) Date, place and manner by which he or she last entered the United States. The manner of entry will include where applicable, the vehicle, vessel, or aircraft used to arrive in the United States;

(10) Crime(s) for which defendant is being sentenced;

(11) Statute(s) under which the defendant is being sentenced;

(12) If already sentenced, or if the subject of a plea bargain, amount of time imposed to be incarcerated;

(13) Whether the sentence renders the crime a felony, misdemeanor, petty offense, or undesignated crime under sentencing authority definition;

(14) A court certified copy of the pre-sentence report;

(15) Date and time of sentencing;

(16) A statement of the defendant's criminal convictions listing the sentencing jurisdiction and the information requested in paragraphs (a)(10), (11), and (12) of this section.

(b) If the foregoing information is unavailable and cannot be reasonably discovered, a declaration under the penalty of perjury shall be attached to the notice which states the particular information that is unavailable, the reasons for the unavailability, and the steps that have been taken to obtain the required information required in paragraph (a) of this section. The notice shall be accompanied by either a copy of the defendant's alien certificate of registration or alien registration receipt card, if any, or an additional declaration, under the penalty of perjury that no such certificate of registration or receipt card exists. The forms listed in 8 CFR 264.1(b) shall constitute evidence of registration. Failure to comply with the requirements in paragraph (a) or (b) of this section will be treated as a failure to provide the INS with due notice of the motion for a judicial recommendation against deportation.

(c) The district director, or an official acting for him or her, in presenting representations to the court, shall advise the court of the effect that a favorable recommendation would have upon the alien's present and prospective deportability. It shall be the duty of the defendant or defense counsel to serve a court certified copy of the judicial recommendation against deportation on the district director to whom notice of the motion was sent. Service may be by any means set forth in 8 CFR 103.5a. Such service shall be regarded as made to the Attorney General.

(d) In any deportation, exclusion, or rescission proceeding conducted before a special inquiry officer, it shall be the duty of the respondent or applicant to provide a court certified copy of the judicial recommendation against deportation to the special inquiry officer when such recommendation will be the basis of denying any charges brought by the service in the proceedings against the respondent or applicant.