Frank **COSTELLO**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent

No. 81, Docket 27597.

United States Court of Appeals
Second Circuit.

Argued Nov. 9, 1962.

Decided Dec. 4, 1962.

344

Edward Bennett Williams, Washington, D. C. (Harold Ungar, Washington, D. C., on the brief), for petitioner.

Roy Babitt, Sp. Asst. U. S. Atty., New York City (Vincent L. Broderick, U. S. Atty., for the Southern Dist. of New York, New York City, on the brief), for respondent.

Before MEDINA, SMITH and KAUFMAN, Circuit Judges.

MEDINA, Circuit Judge.

Frank Costello, an alien, entered the United States from Italy in 1895; he became a naturalized citizen in 1925; he was convicted in 1954 of income tax evasion for the years 1948 and 1949, under two counts of a single indictment that contained no conspiracy charge, United States v. Costello, 2 Cir., 1955, 221 F.2d 668, affirmed, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; and in 1959 his naturalization was revoked. United States v. Costello, 2 Cir., 1960, 275 F.2d 355, affirmed, 1961, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551. Deportation proceedings based upon the two convictions resulted in the order of deportation now sought to be reviewed under 8 U.S.C. § 1105a(a) (1), after an unsuccessful appeal to the Board of Immigration Appeals.

The controlling statute is Section 241(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1251(a), the pertinent provisions of which follow:

"Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \* \*

"(4) ·\* \* \* at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial; \* \* \*."

Costello's contentions are: (1) that the statute was not intended to apply to a person of naturalized status at the time of the convictions; (2) that the Government failed to establish conviction of two crimes "not arising out of a single scheme of criminal misconduct"; (3) that convictions of tax evasion did not constitute convictions of crimes involving moral turpitude; and (4) that it was prejudicial error not to issue a subpoena to the lawyer who represented Costello at the criminal trial for tax evasion, and who allegedly would have testified to the effect that the two convictions did arise "out of a single scheme of criminal misconduct."

We find no merit in any of these contentions and dismiss the petition.

I

After several years of intensive study the Congress passed the Immigration and Nationality Act of 1952, and it became law. One of the specific objectives of this legislation, largely in response to recommendations by the Senate Special Committee to Investigate Organized Crime in Interstate Commerce,[1] was to broaden the provisions governing deportation, "particularly those referring to criminal and subversive aliens." [2]

As the construction of the statute relied upon by Costello would frustrate the general legislative purpose just referred to, and in effect grant immunity, during the period between the granting and the revocation of naturalization, to those who fraudulently obtained the status of citizens, it would seem to require at least a fairly persuasive argu-

1. House Report No. 1365, 82nd Cong., 2nd Sess. (1952), p. 28, U.S.Code Congressional and Administrative News 1952, p. 1653.

2. Commentary on the Immigration and Nationality Act, Walter M. Besterman, Legislative Assistant to the House Committee on the Judiciary, 8 U.S.C.A., Part I, p. 61.

ment to induce us to interpret the statute in such fashion as to require, as a prerequisite to deportation in the case of a denaturalized person, two convictions of crime either prior to his naturalization, or subsequent to the revocation thereof for fraud. In other words, despite the fact that the person sought to be deported has not only been twice convicted of crime, but also has obtained citizenship status by fraud, we are told that by some mischance the statute has been so worded as to leave a loophole through which Costello may avoid deportation.

When the various integral parts of the statute are read together, as they must be, it is not surprising to find that no such loophole exists. There is no ambiguity, and no occasion to apply the rule of Fong Haw Tan v. Phelan, 1948, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433, to the general effect that doubts are to be resolved in favor of the deportee.[3]

Walter M. Besterman, Legislative Assistant to the House Committee on the Judiciary, in his Commentary on the 1952 Act, supra, 8 U.S.C.A. at page 18, states: "Section 1101 dealing with definitions is to be regarded as probably the most important, truly pivotal segment of the statute." See also House Report No. 1365, supra, page 31. 8 U.S.C. § 1101(a) (3), Section 101(a) (3) of the Act, defines an "alien" as "any person not a citizen or national of the United States." Accordingly, as the statute speaks in terms of the time of enforcement, when Section 241(a) (4), 8 U.S.C. § 1251(a) (4), directs that any "alien * * * shall * * * be deported who * * * at any time after entry is con-

victed of two crimes involving moral turpitude," there is no room for interpretation or construction. At the time the proceedings for deportation were commenced Costello was a person not a citizen or national of the United States and the date of his two convictions is at a time after his entry into the United States. In the context of the statute the word "is" appears to us to be the most comprehensive word that could have been used, just as is the case with the phrase "at any time after entry." [4] See Sutherland, Statutory Construction, 3rd Ed., 1943, Section 4930.

Far from supporting Costello's argument on this point, U. S. ex rel. Eichenlaub v. Shaughnessy, 1950, 338 U.S. 521, 70 S.Ct. 329, 94 L.Ed. 307, strongly supports the Government view of the meaning of Section 241(a), 8 U.S.C. § 1251(a). There "[a]ll aliens who since August 1, 1914, have been or may hereafter be convicted" of violations of the Espionage Act of 1917, as amended, were made deportable, provided the Attorney General after a hearing found them to be undesirable residents of the United States. Thus the time of conviction is stated to be, as paraphrased by the Supreme Court, at page 530 of 338 U.S., at page 333 of 70 S.Ct. "since about the beginning of World War I (August 1, 1914), whether those convictions were had before or after May 10, 1920," when the statute under consideration became effective. In Section 241(a), 8 U.S.C. § 1251(a), before us now, the time of the convictions is stated to be "at any time after entry." What the Supreme Court decided was precisely the point now raised by Costello, and it was decided against the de-

---

3. The doubt thus resolved in Fong Haw Tan concerned the meaning of the words "sentenced more than once," various Courts of Appeals in several Circuits having given this phrase different and conflicting constructions.

4. Costello's contention that the use of the word "is" requires that alienage and the deportable crimes be simultaneous rests too much upon this single word of the statute and gives the language of the stat-

ute a meaning contrary to its natural tenor. Indeed, the Supreme Court has paraphrased this section as providing for "the deportation of an alien who 'at any time after entry' has been convicted of two crimes involving moral turpitude." Lehmann v. United States ex rel. Carson, 1957, 353 U.S. 685, 689, 77 S.Ct. 1022, 1024, 1 L.Ed.2d 1122, rehearing denied, 354 U.S. 944, 77 S.Ct. 1421, 1 L.Ed. 2d 1542.

portee. Eichenlaub had fraudulently procured his naturalization, and the revocation or cancellation of his certificate of citizenship took place after his conviction. So he argued that he was not an alien when convicted and that the statute was not applicable, as it did not in terms include an alien who was not an alien at the time of his conviction. This was supposed to be at least an ambiguity to be resolved in favor of the deportee. Despite a strong dissent by Mr. Justice Frankfurter on the basis of this identical argument, the Supreme Court found no ambiguity, and held, at page 530 of 338 U.S., at page 333 of 70 S.Ct.:

"A simpler and equally complete solution lies in the view that the Act does not require that the offenders reached by it must have had the status of aliens at the time they were convicted. As the Act does not state that necessity, it is applicable to all such offenders, including those denaturalized before or after their convictions as well as those who never have been naturalized."

So here, the language of the statute is all inclusive, there are no exceptions. And, to paraphrase the comment in Eichenlaub, at pages 530–531 of 338 U.S., at pages 333–334 of 70 S.Ct., it is difficult to imagine a reason for the Congress to provide for the deportation of an alien, convicted of two crimes involving moral turpitude, who had never been naturalized, but to prohibit the deportation of an alien who had not only been convicted of two crimes involving moral turpitude, but had in addition fraudulently secured a certificate of citizenship. Such a distinction simply does not make sense.

The Congress, in the formulation of the provisions of the 1952 Act, desired to merge all existing statutes, judicial decisions, and administrative interpretations into a single, comprehensive, completely revised immigration and nationality code.[5] There is internal as well as external evidence that those who drafted this code were aware of the decisions of the Supreme Court and of other courts relevant to their task, including Eichenlaub.[6]

The cases relating to allegedly analogous situations, relied upon by Costello are all distinguishable. For purposes of reference, we have collected them in a footnote,[7] but think to discuss them in detail would carry us too far afield. Moreover, we express no opinion relative to the validity and persuasiveness of the reasoning upon which these decisions are based.

A subsidiary point made by Costello on this phase of the case is that he could not fairly be considered to be an alien convicted of two crimes involving moral turpitude, within the meaning of Section 241(a), 8 U.S.C. § 1251(a), as such a construction would, as to him, render meaningless and nugatory the provisions of Section 241(b) (2), 8 U.S.C. § 1251(b) to the effect that Section 241(a), 8 U.S.C. § 1251(a), shall not apply "if the court sentencing such alien for such crime shall make * * * a recommendation to the Attorney General that such alien not be deported."

■ It is a sufficient answer to this contention, we think, to say that any rights arising out of Section 241(b), 8 U.S.C. § 1251(b), were waived by Costello as he had secured his naturalization by fraud. Moreover, Costello is chargeable with knowledge that he had procured his naturalization by fraud, and that deportation proceedings might well follow his conviction on any two of the counts in the indictment for tax evasion. There

5. Sen.Report No. 1515, 81st Cong., 2nd Sess. (1950), pp. 1–4; Joint Hearings on S. 716, H.R. 2379 and H.R. 2816, 82nd Cong., 1st Sess. (1951), pp. 1–4; House Report No. 1365, supra, pp. 27–28.

6. Sen.Report No. 1515, supra, pp. 390–2; Joint Hearings on S. 716, H.R. 2379 and H.R. 2816, supra, p. 694.

7. Mangaoang v. Boyd, 9 Cir., 1953, 205 F.2d 553, cert. denied, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384; Gubbels v. Hoy, 9 Cir., 1958, 261 F.2d 952; Resurreccion-Talavera v. Barber, 9 Cir., 1956, 231 F.2d 524.

was thus nothing to prevent his asking the sentencing court for a recommendation to the Attorney General that he be not deported. In any event, there is no inherent right to the limited privilege afforded by Section 241(b), 8 U.S.C. § 1251(b). Basically, of course, we come back to the comment in the opinion of the Supreme Court in Eichenlaub above referred to. It is nothing short of absurd to suppose that the Congress intended to favor the alien who, over and above his convictions for crimes involving moral turpitude, had been sufficiently clever and unscrupulous to have defrauded the Government into providing him with the protection of a certificate of citizenship.

## II

■ Did the two crimes of income tax evasion arise "out of a single scheme of criminal misconduct"? Costello says they do; we think they do not.

The only evidence relevant to this issue is the record of the convictions, offered by the Government. Costello did not testify. The application for a subpoena to procure the testimony of the lawyer who represented Costello at the criminal trial was properly denied. Any summary by this lawyer of the evidence adduced at the trial or interpretations and speculation by him under the guise of testimony concerning the significance of such evidence or of the maneuvers of counsel would have plainly been completely devoid of probative force. If it was thought that specific portions of the trial transcript or indeed the whole thereof was admissible, the trial transcript or parts thereof, with or without the exhibits received in evidence, should have been offered by Costello at the hearing. No such offer was made; and no ruling admitting or excluding such proof is before us for consideration; so we shall not comment further on this peripheral, so-called procedural point. It has no merit whatever.

Before we address ourselves to the phrase "single scheme of criminal misconduct," it is essential that we have before us a brief description of what the record shows as well as what it does not show. We have already observed that the indictment contains no conspiracy count.

The judgment of conviction under date of May 17, 1954 "adjudged" Costello guilty "of the offense of wilfully and knowingly attempting to defeat and evade a large part of the income tax due and owing by him and his wife for the years 1947–1948–1949, by filing false and fraudulent joint income tax returns," in violation of Section 145(b) of the Internal Revenue Code of 1939, 26 U.S.C. (1940 ed.) § 145(b). We reversed as to the year 1947, and affirmed the conviction of attempting to evade income taxes for the years 1948 and 1949, United States v. Costello, 2 Cir., 1955, 221 F.2d 668; and the Supreme Court affirmed, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397. The prosecution proved its case against Costello by the "net-worth method."

Indubitably the two crimes charged in the counts relative to the years 1948 and 1949 are two separate and distinct crimes. Myres v. United States, 8 Cir., 1949; 174 F.2d 329, 334, cert. denied, 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520; United States v. Johnson, 7 Cir., 1941, 123 F.2d 111, 119, rev'd on other grounds, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Sullivan, 2 Cir., 1938, 98 F.2d 79, 80. The acts constituting the commission of these two crimes are separated by a substantial interval of time. In the absence of additional facts to support an inference that the two crimes are related we think the Special Inquiry Officer was required to find, as he did, that Costello had been convicted of two crimes "not arising out of a single scheme of criminal misconduct." This is enough to dispose of this phase of the case, and it appears to be the reasoning adopted by the First and Ninth Circuits. Chanan Din Khan v. Barber, 9 Cir., 1958, 253 F.2d 547, 549, cert. denied, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364; Fitzgerald ex rel. Miceli v. Landon, 1 Cir., 1956, 238 F.2d 864, 867.

Concededly Costello, when he filed his joint income tax return for the year 1948, was under a definite obligation to file an accurate and truthful return disclosing his income and that of his wife for that year. With respect to that year the only scheme of criminal misconduct discernible in this record is the single scheme to evade the payment to the Government of the income taxes justly due and payable for that year by filing a false and inaccurate return. Similarly, when he filed his income tax return for the year 1949, he was under a definite obligation to file an accurate and truthful return disclosing his income and that of his wife for that year. Here again the only scheme of criminal misconduct discernible in this record is the single scheme to evade the payment of the income taxes justly due and payable for the year 1949. There is no connection whatever between the two. A finding that the two convictions were of crimes "arising out of a single scheme of criminal misconduct" would not only have been clearly erroneous, it would have been without a scintilla of evidentiary support. Moreover, the circumstance that the Government proved its case against Costello by the "net-worth method" is wholly immaterial.

Much as we are tempted to discuss the theories advanced in a number of decisions by various courts with respect to the meaning of the phrase "single scheme of criminal misconduct," we think the exercise of a proper judicial restraint makes it undesirable for us to reach out and now decide more than the circumstances of this case require us to decide. We would not wish, however, to be thought to subscribe to the views expressed in the cases collected in footnote [8]. The statute makes no reference whatever to any "common scheme or plan"; nor would it seem reasonable to suppose that the Congress intended to grant immunity from deportation to those who over a period of time pursued a course of criminal misconduct, involving numerous successive, separate crimes, consummated at different times but in the same manner, or with the same associates, or even by the use of the same fraudulent devices, disguises, tools or weapons. Nor, in the case of successive bank robberies at different times and places, for example, would it seem that these could be said to have arisen out of a single rather than two separate schemes of criminal misconduct, simply because the robbers, prior to the first robbery, had in mind and had discussed the robbery of the second bank after the hue and cry over the first robbery had subsided. After all there is no denying the fact that the Congress by the 1952 Act intended to make it easier rather than more difficult to deport aliens who were recurrent criminals. But this is by the way.

### III

█ The contention that crimes of income tax evasion do not involve moral turpitude need not long detain us. Costello's brief leads us into a labyrinth of technical rulings in a great variety of supposedly analogous situations. But the plain fact remains that Costello was charged with the offenses of "wilfully and knowingly attempting to defeat and evade a large part of the income tax due and owing by him and his wife" for the years 1948 and 1949, by the filing of "false and fraudulent returns," and he was adjudged guilty as charged. The statute pursuant to the terms of which Costello was twice convicted, is as above stated Section 145(b) of the Internal Revenue Code of 1939. The crimes consist of "wilfully" attempting in any manner to evade or defeat any tax imposed by the Act of which Section 145(b) is a part. There can be no "wilful" evasion without a specific intent to defraud. United States v. Martell, 3 Cir., 1952, 199 F.2d 670. Accordingly, we hold the two convictions are of crimes involving moral turpitude. Jordan v. De-

8. Jeronimo v. Murff, S.D.N.Y., 1957, 157 F.Supp. 808, 813; Zito v. Moutal, D.C.Ill., 1959, 174 F.Supp. 531, 535; Barrese v. Ryan, D.C.Conn., 1962, 203 F.Supp. 880, 884. See also Wood v. Hoy, 9 Cir., 1959, 266 F.2d 825, 829.

George, 1951, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886. An alien who is permitted to enter this country and to enjoy the blessings of freedom under the Constitution and laws of the United States, and who wilfully evades or attempts to evade the payment of his fair share of the taxes needed to support our Government is surely engaged in conduct involving moral turpitude.

Petition dismissed.