Edward NASON, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 413, Docket 31864.

United States Court of Appeals
Second Circuit.

Argued April 10, 1968.

Decided April 29, 1968.

Rita E. Hauser, New York City, for petitioner.

Francis J. Lyons, Special Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Daniel Riesel, Special Asst. U. S. Atty., on the brief), for respondent.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge.

Petitioner has been ordered deported to Canada by the Board of Immigration Appeals as an alien who has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Immigration and Nationality Act, § 241(a) (4), 8 U.S.C. § 1251(a) (4).

In a prior petition to this Court, Nason contested an earlier order of deportation by the Board on the ground, *inter alia*, that the Board had not decided the issues before it on the record as a whole. We agreed with petitioner (one judge dissenting), reversed the Board and remanded the case for a determination on the entire record. Nason v. Immigration and Naturalization Service, 370 F.2d 865 (2nd Cir. 1967). On remand, the special inquiry officer, in the first instance, and later the Board of Immigration Appeals, considered the record as a whole, including petitioner's own testimony and once again concluded that petitioner was deportable under § 241(a) (4).

Nason now contends that the order of deportation should be set aside because the Board of Immigration Appeals allegedly applied an improper standard in determining whether the crimes were part of a "single scheme of criminal misconduct" within the meaning of § 241

(a) (4) and because the Board's finding of deportability was not supported by clear, convincing and unequivocal evidence. This time we find ourselves in agreement with the Board. We do not believe that the Board improperly applied the statutory test to the facts of this case, and we find that the Board's decision is adequately supported by the record.

The crimes for which petitioner stands convicted involved two periods of mail fraud activity separated by an interval of over nine months.[1] During the period November 1 through December 31, 1962, Nason rented a Post Office box in the fictitious name of "Charles C. Cole" and ordered various items of merchandise, which were then delivered to that box and "paid" for by worthless checks signed "Charles C. Cole." Nason resumed his mail fraud activity during the period October 2 through October 24, 1963, this time by renting a Post Office box in the ficitious name "Peter Hughes." The scheme and method of operation were similar in both cases and Nason succeeded in defrauding such companies as Doubleday & Co., Macy's, B. Altman and the Curtis Publishing Co. during the two periods in question.

In support of his contention that the crimes arose out of a "single scheme of criminal misconduct," petitioner stresses the basic similarity between the two crimes. He urges that except for the use of a different fictitious name, the crimes in every other respect were identical: his intent and purpose were the same, as was his mode of operation; the merchandise ordered was of a similar type and the victims in both cases were publishing houses and various New York City department stores. Such evidentiary facts, Nason argues, are properly to be considered on the issue of the existence of a "single scheme" under the rule of Jeronimo v. Murff, 157 F.Supp. 808 (S.D.N.Y.1957) and cases which follow the *Jeronimo* rule.[2] The Board, petitioner charges, perversely ignored *Jeronimo,* and failed to give adequate consideration to the basic similarity between the two crimes, choosing instead to rely upon this Court's dictum in Costello v. Immigration and Naturalization Service, 311 F.2d 343, 348 (1962), which rejected any equation of the statutory phrase "single scheme of criminal misconduct" with the notion of a "common scheme or plan."

We are of the view that petitioner's reliance on *Jeronimo* is clearly misplaced. Although the Board endorsed the *Costello* dictum as a correct statement of the law, the record is barren of the slightest indication that the Board failed to give due consideration to the basic similarity between the two crimes,[3] or to petitioner's testimony attempting to relate the two separate periods of mail fraud activity. Indeed, the contrary is true.

1. Petitioner pleaded guilty on April 9, 1965, in the United States District Court for the Southern District of New York, to three counts of an information charging that he unlawfully, wilfully and knowingly devised a scheme to defraud, by use of the mails, during the period from November 1, 1962 through December 31, 1962, in violation of 18 U.S.C. § 1341. At the same time, Nason pleaded guilty to three additional counts of the same information charging him with devising a similar scheme, in violation of the same section, during the period from October 2, 1963 through October 24, 1963. The petitioner does not dispute the fact that the crimes upon which he stands convicted involve moral turpitude.

A fuller discussion of the facts may be found in our earlier opinion in this case, Nason v. Immigration and Naturalization Service, 370 F.2d 865 (2nd Cir. 1967).

2. Sawkow v. Immigration and Naturalization Service, 314 F.2d 34 (3d Cir. 1963); Wood v. Hoy, 266 F.2d 825 (9th Cir. 1959); Barrese v. Ryan, 203 F.Supp. 880 (D.Conn.1962); Zito v. Moutal, 174 F. Supp. 531 (N.D.Ill.1959).

3. The Board noted specifically the contrast between the facts of the present case and those involved in *Jeronimo* where " * * * the period of time charged in the first count encompassed the periods of time of the acts charged in every one of the other counts, and all the acts constituted parts of a common scheme and plan."

It was uncontroverted that the two crimes were separated by a span of over nine months. Although Nason testified that he had originally intended to use several fictitious names and accounts over an extended period of time, he could not recall these other names at the hearing; moreover, when asked why he had failed to use the other names, petitioner answered, "I was apprehended." There was no evidence whatsoever, that petitioner had engaged in mail fraud activity or used any other fictitious names during the nine months which intervened between the first and second crimes. Nason also denied specifically that at the time he formed his original intention he envisioned pursuing the crime, ceasing his activities, and then resuming his mail fraud manipulations. On the contrary, when asked why he had discontinued his activity under the name of "Charles C. Cole," petitioner explained that he had obtained all the merchandise he desired during that particular period.

The Government, admittedly, bears a heavy burden of proof in a deportation case: its case must be established by "clear, unequivocal and convincing evidence," a test approaching that in a criminal case of proof "beyond a reasonable doubt." Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). In a case arising under § 241(a) (4) of the Immigration and Nationality Act, it is part of the Government's burden to establish that the convictions did not arise out of a single scheme of criminal misconduct. Wood v. Hoy, 266 F.2d 825 (9th Cir. 1959); Zito v. Moutal, 174 F.Supp. 531 (N.D.Ill.1959). That burden has been met here. Viewing the evidence in a light most favorable to Nason, the most that can be claimed is that at the time he commenced his criminal activity he harbored a general

intention or expectation that he would repeat the crime at some indefinite time in the future. By petitioner's own admission, the nine-month interlude between the first and second periods of criminal activity was not anticipated and did not form an integral part of petitioner's scheme to defraud through use of the mails. Petitioner terminated his first period of criminal activity simply because he had acquired all he wanted.

In *Costello*, supra, we held that where the acts constituting the commission of two crimes are separated by a substantial interval of time, a special inquiry officer of the Immigration and Naturalization Service would be required to find that an alien had been convicted of two crimes not arising out of a single scheme of criminal misconduct, in the absence of additional facts to support an inference that the two crimes were related. 311 F.2d at 347. In the present case there was evidence, other than the record of convictions, which was relevant to the issue of whether more than one scheme existed, and which, as we held when this case was first here for review, the Board was required to consider. Beyond the record of conviction here, which itself supports a strong inference that the two periods of criminal activity, separated by nine months, did not arise out of a single scheme of criminal misconduct, the Board had before it the testimony of the petitioner already referred to, which tended to corroborate the reasonable inference to be drawn from the conviction record in this case. Against this, the record merely contained Nason's assertion that he originally contemplated repeating the crime, using other fictitious names, at some indefinite time in the future.[4] The Board did not consider such a general intention to repeat a crime similar in character at some indefinite time in the future enough to

---

4. As indicated, we have considered the record evidence in a light most favorable to petitioner. It should be noted, however, that the special inquiry officer who conducted the original deportation hearing and who had an opportunity to hear and observe Nason did not find him a credible witness. He could well have concluded that the facts supported the more reasonable view that petitioner decided that his successful venture nine months earlier warranted repetition. Cf., Chanan Din Khan v. Barber, 147 F.Supp. 771, 774 (N.D.Cal.1957).

constitute the two distinct crimes a "single scheme of criminal misconduct" within the meaning of § 241(a) (4). We are in agreement.

■ It is generally conceded that in enacting the 1952 Act, Congress intended to facilitate the deportation of undesirable aliens. Cf., Chanan Din Khan v. Barber, 147 F.Supp. 771, 773 (N.D.Cal.1957). Although there is no meaningful legislative history to illumine the meaning of the specific statutory language "two crimes * * * not arising out of a single scheme of criminal misconduct," we think it evident from the statute itself that Congress intended this restriction to operate so that a one-time alien offender would be afforded a second chance before he could be deported. Deportation for misconduct, as the Supreme Court noted in Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948), is a drastic penalty. The alien's stake is, therefore, considerable. Congress, consequently, reserved deportation for those who, having completed a criminal scheme, proceeded to commit a fresh crime or to renew the prior course of criminal conduct.

The statutory language, "a single scheme of criminal misconduct," is not so narrow as a single criminal act or transaction. See Wood v. Hoy, 266 F.2d 825 (9th Cir. 1959); Zito v. Moutal, 174 F.Supp. 531 (N.D.Ill.1959). As Judge Hoffman noted in Zito, supra, "The duration of a criminal episode must vary with the nature of the offenses committed. Not every offense can be committed quickly and in one place." 174 F.Supp. 538. Petitioner's crimes, however, were

separated by an interval of over nine months and, as petitioner revealed by his own testimony, the nine month hiatus was not integral to his original scheme.[5]

■ Petitioner's nebulous intention to repeat his crime with the same or other victims some day in the indefinite future, will not bridge the gap of nine months. The word "scheme" implies a specific, more or less articulated and coherent plan or program of future action, much more than a vague, indeterminate expectation to repeat a prior criminal *modus operandi*. As used in the statute, "scheme" is not to be construed as an abstract concept or strategy capable of future application at any time and any place, but planned definitely for none. It is here, especially, that Nason's stress on the similarity between the two crimes misses the mark. It should be noted that the statute does not speak in terms of a "common scheme or plan." The impropriety of such a test is readily apparent for it could be invoked to save an alien who repeated a successful crime already tried and had the good fortune to employ not only the same methods, but also to have chosen the same or a similar victim. Congress meant to give the alien a second chance, not to spare the recidivist. See *Costello,* supra, 311 F.2d at 348. Under the circumstances of this case, petitioner cannot with grace urge that he was not given that second chance.

To be sure, evidence of the similarity of two crimes in terms of intent, motive, purpose, techniques, similarity of victims and the like may often be significant on the issue of the existence of a "single scheme," especially in serial crimes.

---

5. As a minimum standard, the Board of Immigration Appeals has suggested that "The least that would appear to be required is the existence of a purpose so definite and limited in scope, both as to amount and as to time, place and manner of execution, as to make it reasonably probable that the very crimes for which the respondent stands convicted would be the ones which he would commit." Matter of Vosganian, Int. Dec. 1676 (Board of Immigration Appeals, 1966).

That test, if sensibly applied, would seem to be in harmony with the Congressional purpose. A reasonable probability test would shelter both the case of multiple crimes arising out of the same act or transaction and the case of the successive series of uninterrupted and connected crimes, thus preserving for the alien the second chance which Congress intended to give him.

Such evidence may establish that what appeared at first blush as separate and distinct crimes may, indeed, have been spawned by a single criminal scheme. But, it does not have that conclusive significance so that it could, by itself, outweigh other overwhelming evidence that the two crimes were unrelated. Since the evidentiary test laid down in Jeronimo v. Murff, supra, relied on by petitioner, does not appear to go beyond what we have said here, we do not consider it inconsistent with our holding in this case.

The decision of the Board of Immigration Appeals finding petitioner an alien deportable under § 241(a) (4) of the Immigration and Nationality Act was not erroneous and we accordingly dismiss the petition.