### Ricardo GONZALEZ–SANDOVAL, Petitioner,

### v.

### U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

### No. 88–7461.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 18, 1990.

Decided Aug. 7, 1990.

Paolo Raffaelli, Santa Clara, Cal., for petitioner.

Stewart Deutsch, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for respondent.

Before SCHROEDER and CANBY, Jr., Circuit Judges, and GILLIAM,* District Judge.

SCHROEDER, Circuit Judge:

Under 8 U.S.C. § 1251(a)(4)(1982), an alien lawfully admitted to this country is deportable if convicted of two crimes "not arising out of a single scheme." In this petition for review of a deportation order, we are asked to decide whether two bank

---

\* Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation.

robberies occurring within two days of each other, at the same bank, and which petitioner conceived and planned at the same time, constituted crimes "arising out of a single scheme of criminal misconduct" for the purposes of exempting petitioner, Ricardo Gonzalez–Sandoval, from deportation under 8 U.S.C. § 1251(a)(4). Following our decision in *Wood v. Hoy*, 266 F.2d 825 (9th Cir.1959), we hold that the crimes did arise out of a single scheme and we reverse the deportation order.

Ricardo Gonzalez–Sandoval is a native and citizen of Mexico and last entered the United States on September 9, 1961, as a lawful permanent resident. Gonzalez testified at his deportation hearing that at some time prior to July 21, 1980, he devised a scheme to acquire between ten and eleven thousand dollars by robbing a single bank three times. When his attorney asked him, at the hearing, why he planned three robberies, he responded, "because the tellers only have about $1,000 and one time wouldn't be enough and neither would two times and that's why I robbed it."

Pursuant to his plan, on July 21, Gonzalez entered the Home Savings and Loan in Santa Cruz, California, and robbed one teller. On his second trip to the bank, Gonzalez robbed three tellers on July 23, 1980. Gonzalez did consider robbing the same bank a third time but "there was too many business people inside that looked like they might be undercover officers on duty or something hanging around the bank." Gonzalez was ultimately convicted of four counts of robbery (one count on July 21 and three counts on July 23) in California state court.

On November 6, 1984, Gonzalez was served with an Order to Show Cause alleging his deportability pursuant to 8 U.S.C. § 1251(a)(4).[1] On March 4, 1986, after a hearing, the Immigration Judge, accepting the testimony as credible, concluded that "notwithstanding that there was a common intent, motive, purpose, and to a certain extent a similar technique used in the two robberies, the conduct of this Respondent constituted two separate and distinct crimes of robbery." In reaching this result the Immigration Judge relied upon the First Circuit's decision *Pacheco v. INS*, 546 F.2d 448 (1st Cir.1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977). He did not consider our decision in *Wood v. Hoy*.

The Board of Immigration Appeals affirmed, with two members dissenting. The Board majority did acknowledge that Ninth Circuit precedent would ordinarily control, but declined to follow it:

> *Wood v. Hoy* ... is controlling in this unsettled area of the law, ... [but] this decision is nearly 30 years old. More importantly, however, we do not believe that the Ninth Circuit ever intended to immunize from deportation the respondent who has committed a series of grave crimes, such as this respondent has committed.

Instead, the Board relied on the First Circuit's decision in *Pacheco* to hold that the adjective "single" must point to a "temporally integrated episode of continuous activity," *Pacheco*, 546 F.2d at 452, in order for a 'single scheme' to exist. Since two days elapsed between bank robberies, the Board held that Gonzalez failed this test.

Board member Dunne, dissenting, and joined by chairman Milhollan, agreed with the Board that *Wood v. Hoy* was controlling, but distanced herself from the Board with this comment: "I believe that this Board is bound to apply the controlling law of the circuit in which this case arises." We agree. For that reason, member Dunne and chairman Milhollan would have

---

1. This subsection provides:
   (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
   \* \* \* \* \* \*
   (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of *two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether ... the convictions were in a single trial;* ....

   8 U.S.C. § 1251(a)(4) (emphasis added).

held that Gonzalez was not subject to deportation.

In *Wood v. Hoy*, Wood was convicted of two counts of robbery, the first occurring on July 13, 1956 and the second on July 16, 1956. The evidence introduced by the government to show that the two crimes did not arise out of a single scheme of criminal misconduct was Wood's responses to two questions at his deportation hearing. He was asked first whether he was one of the persons named in the information and second whether he had pleaded guilty to the two counts of robbery. Wood replied "yes" to both questions, and the government produced no further proof regarding the relationship between the two robberies. However, at the deportation hearing Wood was also examined by his own counsel and indicated that both robberies were planned by his co-defendant at the same time. "There was no cross-examination by the government and no evidence was introduced by the government to rebut the testimony of the appellant." 266 F.2d at 831. We held that the government's proof was insufficient to demonstrate that the crimes did not arise out of a single scheme. We were careful to note:

> It may be that in some cases the proof of the commission of two crimes made by the very nature of the crimes themselves, or the time or circumstances of their commission, be reasonable, substantial and probative evidence they did not arise out of a single scheme of criminal misconduct. We do not say that that is not possible. However, that is not this case.

*Id.* at 831. Nor is it this case. Under the law of this circuit, where credible, uncontradicted evidence, which is consistent with the circumstances of the crimes, shows that the two predicate crimes were planned at the same time and executed in accordance with that plan, we must hold that the government has failed in its burden to establish that the conviction did not arise out of "a single scheme of criminal misconduct" within the meaning of 8 U.S.C. § 1251(a)(4).

*LeTourneur v. INS*, 538 F.2d 1368 (9th Cir.1976), *cert. denied*, 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977), provides a contrast. *LeTourneur*, in which we distinguished *Wood v. Hoy*, was a case where two robberies were committed in different circumstances and there was never any contention before the ALJ that they arose out of a single scheme.

We recognize that the First Circuit has devised a different test for ascertaining whether the predicate crimes arise out of a single scheme. The First Circuit has deemed that crimes arising out of a single scheme "must take place at one time; there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise and reflect on what he has done." *Pacheco*, 546 F.2d at 451. Such an interpretation, however, appears to strain the language of the statute. The statute exempts crimes arising out of a "single *scheme* of criminal misconduct" and not those out of a single criminal *act*, as the government would have us read it. *See Wood v. Hoy*, 266 F.2d at 830.

There is a circuit conflict, but it has apparently not had a very serious impact on litigation. Our research has uncovered only five cases, other than *Wood v. Hoy* and *Pacheco*, that have reached the Circuit Courts of Appeals since 1958. *See LeTourneur; Nason v. INS* (*Nason* II), 394 F.2d 223 (2d Cir.), *cert. denied*, 393 U.S. 830, 89 S.Ct. 98, 21 L.Ed.2d 101 (1968); *Sawkow v. INS*, 314 F.2d 34 (3d Cir.1963); *Costello v. INS*, 311 F.2d 343 (2d Cir.1962), *rev'd on other grounds*, 376 U.S. 120, 84 S.Ct. 580, 11 L.Ed.2d 559 (1964); *Chanan Din Khan v. Barber*, 253 F.2d 547 (9th Cir.), *cert. denied*, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364 (1958). All are consistent with this Court's analysis in *Wood v. Hoy*.

The Second Circuit twice considered the case of *Nason v. INS*. *Nason v. INS* (*Nason* I), 370 F.2d 865 (2d Cir.1967); *Nason* II, 394 F.2d 223 (2d Cir.1968). After first remanding the case to the Board, the Circuit eventually upheld the deportation because the crimes were separated by a nine-month hiatus unrelated to the original

scheme. 394 F.2d at 227. The court cited *Wood v. Hoy* with approval for the proposition that "[t]he statutory language, 'a single scheme of criminal misconduct,' is not so narrow as a single criminal act or transaction." *Id.*

The Third Circuit in *Sawkow v. INS*, 314 F.2d 34 (3d Cir.1963), followed *Wood v. Hoy* and reversed and remanded a deportation order where the only evidence introduced by the government was the record of the convictions and indictments for a theft and receipt of stolen property occurring a day apart. The court held that this evidence was insufficient for the government to meet its burden to prove that the two crimes were not part of a "single scheme of criminal misconduct." *Id.* at 38.

This circuit and the Second Circuit have both decided cases involving income tax evasion in different years, and both opinions reached the same result: based upon the specific facts of each case, the crimes did not arise out of the same scheme. *See Costello*, 311 F.2d 343; *Chanan*, 253 F.2d at 547. Our opinion in *Wood v. Hoy* discussed the *Chanan* case, and distinguished it because the crimes occurred in different years and there was no evidence that they arose out of the same scheme. *Wood v. Hoy*, 266 F.2d at 829.

Thus all circuit decisions since 1958, with the exception of *Pacheco*, are consistent with *Wood v. Hoy*. The handful of decisions in district courts construing the statute are also consistent with the reasoning of *Wood v. Hoy*. *See Barrese v. Ryan*, 203 F.Supp. 880, 886–87 (D.Conn.1962) (rejecting the Board's interpretation of this statute that "single scheme" must be equated with "one criminal episode"); *Zito v. Moutal*, 174 F.Supp. 531, 536 (N.D.Ill.1959) ("deportation may not be predicated upon offenses which are part of a single continuing enterprise even though the offenses are separated by time."); *Jeronimo v. Murff*, 157 F.Supp. 808, 813 (S.D.N.Y.1957) (all the acts and transactions described in the indictment were closely "connected to-

gether" constituting the "parts" of one "scheme and plan").

The government attempts to distinguish *Wood v. Hoy* on the ground that *Wood v. Hoy* involved a conspiracy, while this case involves a single actor. Such a distinction, however, is not consistent with the rationale of *Wood v. Hoy*. Under the reasoning of that decision, it would have made no difference whether the alien himself or another had conceived the original plan.

Because the ALJ and the Board applied a legally erroneous test to determine that the petitioner committed two crimes "not arising out of the same scheme," the order of deportation is REVERSED.