Jose Ruben
**LEON–HERNANDEZ, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 89–70319.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1990.

Decided Feb. 26, 1991.

Jan Joseph Bejar, San Diego, Cal., for petitioner.

Jill E. Zengler and Donald A. Couvillon, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before SKOPIL, BEEZER and FERNANDEZ, Circuit Judges.

BEEZER, Circuit Judge:

This is a petition to review a decision of the Immigration and Naturalization Service (INS) ordering the petitioner deported on the ground that he was convicted of two crimes involving moral turpitude, and denying his application for suspension of deportation and voluntary departure. Because we agree that the acts for which petitioner was convicted do not arise out of a single scheme of criminal misconduct, we affirm the decision of the INS.

Jose Ruben Leon–Hernandez is a 38 year old native and citizen of Mexico. He entered the United States without inspection in 1975. In December 1982, Leon–Hernandez pleaded guilty to and was convicted of two counts of oral copulation with a person under the age of 16. The acts out of which the conviction arose occurred on September 18, 1981 and October 21, 1981. He was sentenced to consecutive prison terms, one of three years and the other of eight months. Leon–Hernandez was released from imprisonment in December, 1986.

On November 29, 1984, the INS issued an Order to Show Cause charging Leon–Hernandez with being deportable, pursuant to 8 U.S.C. § 1251(a)(4), as a person who has been convicted of two crimes involving moral turpitude. At his deportation hearing in November 1985, the immigration judge rejected Leon–Hernandez's argument that his convictions were part of a single scheme of criminal conduct and held him ineligible for either suspension of deportation or voluntary departure. Leon–Hernandez appealed to the Board of Immigration Appeals, which dismissed his appeal on April 27, 1989. Leon–Hernandez petitions this court for review of the BIA's decision. We affirm.

I

An alien may be deported from the United States if, "at any time after entry [he] is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, ... regardless of whether the convictions were in a single trial." 8 U.S.C. § 1251(a)(4) (1988). The INS must prove deportability by clear, convincing and unequivocal evidence. *Gameros–Hernandez v. INS*, 883 F.2d 839, 841 (9th Cir.1989). The burden in this case, therefore, is on the government to show

that Leon–Hernandez's convictions do not arise out of a "single scheme of criminal misconduct." *See Wood v. Hoy,* 266 F.2d 825, 830 (9th Cir.1959).

The determination whether there was a single scheme of misconduct is a factual one. The BIA's findings of fact are conclusive if they are "substantially reasonable." *De Valle v. INS,* 901 F.2d 787, 790 (9th Cir.1990). *See also* 8 U.S.C. § 1105a(4) (1988). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *American Textile Mfgs. Institute, Inc. v. Donovan,* 452 U.S. 490, 523, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981).

Leon–Hernandez contends that his crimes were part of a single scheme because they were brought in a single charge and resulted in a single conviction. He quotes the Regional Counsel for the INS as stating that an alien may be deported pursuant to section 1251(a)(4) "if he has suffered *two or more convictions* of crimes involving moral turpitude...." (Emphasis added by Leon–Hernandez.) However, the fact that Leon–Hernandez was convicted only once is of no significance in light of the clear language of the statute that an alien may be deported if "convicted of two crimes ... *regardless of whether the convictions were in a single trial.*" 8 U.S.C. § 1251(a)(4) (1988) (emphasis added). Furthermore, in *Chanan Din Khan v. Barber,* 253 F.2d 547, 548 (9th Cir.), *cert. denied,* 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364 (1958), we found that there was not a single scheme of misconduct in a case in which the appellant was convicted, as was Leon–Hernandez, of "both counts of a two count indictment."

Leon–Hernandez also argues that his crimes were part of a single scheme of criminal misconduct because they resulted from his "unlawful ongoing relationship with a minor female." We first examined the meaning of the phrase "single scheme of criminal misconduct" in *Chanan, id.,* where an alien was convicted of two counts of income tax fraud in the filing of two separate tax returns, one year apart. We noted that different evidence was required to prove each count and stated that "[i]n the absence of all evidence to the contrary, completed crimes committed on differing dates or in differing places are considered separate and different crimes, and support separate charges." *Id.* at 549.

Contrary to Leon–Hernandez's assertion, an alien must do more than simply present "any evidence" of a common scheme to rebut the presumption created in *Chanan.* We have addressed the question of overcoming the presumption only in the context of bank robberies, most recently in *Gonzalez–Sandoval v. INS,* 910 F.2d 614 (9th Cir.1990). In *Gonzalez,* an alien was convicted of robbing the same bank twice in two days. The alien presented evidence that he had planned from the outset to rob the bank three times. *Id.* at 615. We found there to be a single scheme of misconduct because

> where credible, uncontradicted evidence, which is consistent with the circumstances of the crimes, shows that the two predicate crimes were planned at the same time and executed in accordance with that plan, we must hold that the government has failed in its burden to establish that the conviction did not arise out of a 'single scheme of criminal misconduct.'

*Id.* at 616 (quotation omitted). *See also Wood,* 266 F.2d at 831–32 (a single scheme existed because two robberies were planned by the participants at the same time, and were committed within three days of each other, by the same people, using the same means); *cf. LeTourneur v. INS,* 538 F.2d 1368, 1371 (9th Cir.1976) (no single scheme where there was no contention that two robberies, committed in different circumstances, arose out of a single scheme), *cert. denied,* 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977). In *Gonzalez,* we expressly rejected the First Circuit's interpretation that "crimes arising out of a single scheme 'must take place at one time; there must be no substantial interruption that would allow the participant to disassociate himself from his enter-

prise and reflect on what he has done.'" *Gonzalez,* 910 F.2d at 616 (quoting *Pacheco v. INS,* 546 F.2d 448, 451 (1st Cir.1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977)).

Leon–Hernandez did present some evidence intended to show that there was a single scheme, but he did not show that the crimes were executed according to any considered plan, as was the case in both *Wood* and *Gonzalez.*[1] He argues, however, that such explicit planning is only a factor in identifying a single scheme, and is not dispositive in the context of crimes arising out of an ongoing relationship. In this respect, the Second Circuit's decision in *Nason v. INS,* 394 F.2d 223 (2d Cir.), *cert. denied,* 393 U.S. 830, 89 S.Ct. 98, 21 L.Ed.2d 101 (1968), is instructive. In *Nason,* the alien argued that two crimes of mail fraud were part of a single scheme because, with the exception of the fact that he used a different fictitious name for each, the crimes were identical in every respect. *Id.* at 225. Although the court did not disagree that the crimes were essentially identical, it determined that the evidence did not show that the nine month hiatus between the two crimes was intended to be a part of the asserted scheme. The court explained that

> Petitioner's nebulous intention to repeat his crime with the same or other victims some day in the indefinite future, will not bridge the gap of nine months. The word "scheme" implies a specific, more or less articulated and coherent plan or program of future action, much more than a vague, indeterminate expectation to repeat a prior criminal *modus operandi.* As used in the statute, "scheme" is not to be construed as an abstract concept or strategy capable of future appli-

cation at any time and any place, but planned definitely for none.

*Id.* at 227.

We adopt the reasoning of *Nason.* The only evidence Leon–Hernandez offered to rebut the presumption of separate crimes created by the fact that the crimes were committed on different dates, *see Chanan,* 253 F.2d at 549, was that he believed his relationship with the victim to be that of boyfriend to girlfriend. At the very most, this evidence implies only that Leon–Hernandez had, at some time, a "nebulous intention to repeat his crime with the same ... victim[ ] some day in the indefinite future." *Nason,* 394 F.2d at 227. In the absence of evidence of a more conscious, coherent "plan or program of future action," *Id.,* the BIA's determination that Leon–Hernandez's crimes did not arise from a single scheme of criminal misconduct is reasonable.

## II

■ The Attorney General may, in his discretion, suspend the deportation of an alien deportable under section 1251(a)(4) if the alien

> has been physically present in the United States *for a continuous period of not less than ten years immediately following the commission of an act ... constituting a ground for deportation,* and proves that during all of such period he has been and is a person of good moral character....

8 U.S.C. § 1254(a)(2) (1988) (emphasis added). An alien who is deportable under section 1251(a)(4) is ineligible for voluntary departure. *Id.* § 1254(e)(1).[2]

---

**1.** At argument, Leon–Hernandez claimed that he was unable to present evidence of a single scheme of misconduct because of the immigration judge's statement that evidence that the crimes involved the same person, and that they were involved in an ongoing relationship, "would be of very little utility." However, the judge concluded by saying, "if [Leon–Hernandez] wishes to provide testimony that it was the same person ... and if you wish to make some argument ... that it was part of the same scheme, for purposes of the immigration laws, then you can do that." Furthermore, whatever discouragement may have been the result of the

immigration judge's statement, Leon–Hernandez's counsel appears to have been aware that he was creating a record for administrative and judicial review as well as for the benefit of the immigration judge, as is evident by the fact that Leon–Hernandez did testify regarding the nature of his relationship with the victim of his crimes.

**2.** Section 1254(e)(1) provides that

> the Attorney General may, in his discretion, permit any alien under deportation proceedings, *other than an alien within the provisions*

The last of the crimes for which Leon–Hernandez was convicted was committed on October 21, 1981, less than ten years ago. Therefore, because we conclude that Leon–Hernandez's crimes do not arise out of a single scheme of criminal misconduct, Leon–Hernandez is statutorily ineligible for either suspension of deportation or voluntary departure.

AFFIRMED.

*of paragraph (4) ... of section 1251(a) of this title,* ... to depart voluntarily from the United States at his own expense in lieu of deportation....

8 U.S.C. § 1254(e)(1) (1988) (emphasis added).