53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Leopoldo LUNA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70265.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 2, 1995.*
Decided May 5, 1995.
 
 Before: WALLACE, Chief Judge, HUG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Leopoldo Luna, a native and citizen of Mexico, petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") decision finding him deportable under 8 U.S.C. Sec. 1251(a)(4) as an alien convicted of two crimes of moral turpitude which did not arise out of a single scheme of criminal misconduct. Luna argues that the IJ erred (1) by finding that his convictions were part of a "single scheme," (2) by admitting his probation report as evidence and (3) by denying his request for a waiver of deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(c). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we deny the petition.
 
 
 3
 * Background
 
 
 4
 Luna, a lawful permanent resident, entered the United States from Mexico in 1973. On December 2, 1985, Luna was convicted of two counts of robbery in California state court. Luna was issued an order to show cause on August 21, 1989 charging him as being deportable as an alien convicted of "two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C. Sec. 1251(a)(4). On January 31, 1991, the IJ found Luna deportable as charged and denied his application for a section 212(c) waiver. The BIA affirmed, and Luna timely petitioned for review.
 
 II
 Single Scheme
 
 5
 Luna contends that the BIA erred by finding his two robbery convictions did not arise out of a "single scheme of criminal misconduct." This contention lacks merit.
 
 
 6
 An agency's determination of whether there was a single scheme of conduct will be upheld if it is "substantially reasonable." Leon-Hernandez v. INS, 926 F.2d 902, 904 (9th Cir.1991). "In the absence of all evidence to the contrary, complete crimes committed on differing dates or in differing places are considered separate and different crimes." Chanan Din Khan v. Barber, 253 F.2d 547, 549 (9th Cir.), cert. denied, 357 U.S. 920 (1958). To show that the crimes committed were part of a single scheme of conduct, rather than separate and different crimes, the alien must submit "credible, uncontradicted evidence, which is consistent with the circumstances of the crimes [that] shows that the two predicate crimes were planned at the same time and executed in accordance with that plan...." Leon-Hernandez, 926 F.2d at 904 (quoting Gonzales-Sandoval v. INS, 910 F.2d 614 (9th Cir.1990)).
 
 
 7
 Here, the INS presented evidence, in a probation report, that Luna robbed two separate victims, three and one half hours apart, in separate places. Thus, Luna was required to present "credible, uncontradicted evidence" showing that the robberies were planned at the same time and executed according to that plan. Id. Luna, however, presented vague and conflicting testimony about the night of the robbery, first insisting that he did not remember the evening at all because he had been under the influence of PCP, but at a later hearing testifying that "it came up to a girl's idea where she, she wanted money and so, so we said hey, you know, so they, everybody said hey, let's go, you know .. take people's, you know, wallet and stuff and take their money, and that's what we did."
 
 
 8
 Because Luna failed to submit "credible, uncontradicted evidence" that the two crimes were part of a single scheme, the BIA did not err in finding Luna deportable. See id.
 
 III
 Admission of the Probation Report
 
 9
 Luna next contends that the BIA erred in allowing his probation report to be admitted as evidence that the robberies were two separate crimes because (1) the report was not authenticated, (2) the report was hearsay, and (3) admission of the report violated his right to cross-examine witnesses. These contentions lack merit.
 
 A. Authentication
 
 10
 Due process requires that government forms admitted in deportation proceedings be authenticated. Iran v. INS, 656 F.2d 469, 472 (9th Cir.1981). INS regulations provide that in immigration proceedings, "an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy." 8 C.F.R. Sec. 287.6(a); Espinoza v. INS, No. 94-70094, 1995 U.S.App. LEXIS 7699, at * 6 (9th Cir. Jan. 12, 1995) (certification of an INS document by the district director satisfied due process because it conformed to 8 C.F.R. Sec. 287.6(a)).
 
 
 11
 Because Luna's probation report was certified by a California superior court judge, the IJ did not err by finding the report admissible. See id.
 
 B. Hearsay
 
 12
 "[A]dministrative proceedings are not controlled by strict rules of evidence." Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir.1988). "The sole test for admission of evidence [in deportation proceedings] is whether the evidence is probative and its admission is fundamentally fair." Espinoza v. INS, No. 94-70094, 1995 U.S.App. LEXIS 7699, at * 6 (9th Cir. Jan. 12, 1995). Furthermore, "information on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien." Id. at * 8.
 
 
 13
 Here, the probation report used to sentence Luna for his robbery convictions was probative on the issue of whether Luna's crimes were part of a single scheme. In addition, Luna presented no evidence at the deportation hearing which suggested that the statements in the probation report were unreliable. In fact, the information in the probation report is virtually identical to Luna's own testimony at his deportation hearing. Because Luna's probation report was probative and reliable, the admission was fundamentally fair, and the BIA did not err in finding the report admissible. See id.
 
 
 14
 C. Cross-Examination of probation report preparer
 
 
 15
 "[A]n alien must have a reasonable opportunity to cross-examine witnesses presented by the Government." Id. at * 9; 8 U.S.C. Sec. 1252(b)(3). However, "[a]liens in deportation proceedings may not assert a cross-examination right to prevent the government from establishing uncontested facts." Espinoza, 1995 U.S.App. LEXIS 7699, at * 10 (internal quotations omitted).
 
 
 16
 Here, the probation report stated that two different victims were robbed by Luna at gunpoint, three and one-half hours apart, at two different locations. Luna submitted no evidence to contradict these facts. In fact, he testified that he did not remember anything about the robberies because he had taken PCP earlier in the evening.
 
 
 17
 Because the facts in the probation report were uncontested, Luna had no right to cross-examine the preparer of the report, and the IJ did not err in finding the report admissible. See id.
 
 IV
 Section 212(c) Waiver
 
 18
 "We review agency fact-finding to see if it is supported by substantial evidence, and the balancing of the equities underlying a 212(c) determination for an abuse of discretion." Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir.1993) (internal cites omitted).
 
 
 19
 A decision to deny section 212(c) relief will be set aside only if the BIA "failed to support its conclusions with a reasoned explanation based upon legitimate concerns." Ayala-Chavez v. INS, 944 F.2d 638, 642 (9th Cir.1991) (internal quotations omitted). In deciding whether an alien merits relief under section 212(c), the BIA must take into account the social and humane considerations presented in the alien's favor and balance them against evidence of the alien's undesirability as a permanent resident.[1] Yepes-Prado, 10 F.3d at 1365-66. Applicants for discretionary relief who have been convicted of serious offenses must demonstrate unusual or outstanding equities. See Paredes-Urrestarazu v. INS, 36 F.3d 801, 806 (9th Cir.1994). "Where the BIA does not perform an independent review of the IJ's decision and instead defers to the IJ's exercise of his or her discretion, it is the IJ's decision that we review." Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1993).
 
 
 20
 Here, because the BIA adopted the IJ's "detailed balance of the factors" considered in support of Luna's 212(c) application, we review the IJ's decision for substantial evidence. See id. The IJ noted Luna's equities, including his lengthy residence in this country, his family ties, his marriage to a United States citizen with whom he had a young son, his history of recent employment and a recommendation letter from his parole officer. Against these equities, the IJ weighed the following negative factors; (1) Luna, his wife and child were healthy, (2) Luna was bilingual, young and able to work, (3) Luna had not served in the armed forces, had no property or business ties, offered no evidence of service to the community and had been unemployed until one year before the deportation hearing. The IJ then considered Luna's "pattern and succession of criminal acts," including that Luna; (1) had attended juvenile court schools since tenth grade due to delinquency, gang membership and difficulties with the police; (2) had admitted using drugs and abusing alcohol; (3) had been on probation for shooting a rival gang member at the time he committed the two robberies; (5) had used a loaded gun, threats of physical harm and premeditation in committing the robberies; (6) had been convicted of possessing a weapon while in prison for the robberies; and (7) had subsequently had his parole revoked for association with gang members.
 
 
 21
 Because the IJ supported its conclusion with "a reasoned explanation based upon legitimate concerns," see Ayala-Chavez, 944 F.2d at 642, the IJ did not abuse his discretion in denying Luna's 212(c) application.
 
 
 22
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The BIA has set out factors which it will consider in making its equitable determination. Yepes-Prado, 10 F.3d at 1366. Factors weighing against waiver include: (1) the nature and underlying circumstances of the ground of deportation; (2) the presence of other violations of the nation's immigration laws; (3) the existence of a criminal record; and (4) the presence of other evidence indicative of the applicant's bad character or undesirability as a legal permanent resident of the United States. Factors weighing in favor of waiver include: (1) the presence of family ties within the United States; (2) residence of long duration in this country; (3) hardship to the alien and family if deported; (4) history of employment; (5) property or business ties; (6) community service; and (7) when there is a criminal record, genuine rehabilitation. Id